NORTH CAROLINA ELECTRIC
MEMBERSHIP CORPORATION
et al., Plaintiffs,

v.

CAROLINA POWER & LIGHT COMPA-
NY and South Carolina Electric &
Gas Company, Defendants.

No. C–77–396–G.

United States District Court,
M. D. North Carolina,
Greensboro Division.

May 3, 1979.

Thomas J. Bolch, Raleigh, N. C., Wallace E. Brand and Edward E. Hall, Washington, D. C., for plaintiffs.

Robert C. Howison, Jr., Raleigh, N. C., James H. Burnley IV, Greensboro, N. C. and Charles B. Robson, Jr., Raleigh, N. C., for defendants Carolina Power & Light Co. ("CPL").

## MEMORANDUM OPINION

GORDON, Chief Judge.

This case was noticed for hearing on April 26, 1979, in the United States Courtroom, Greensboro, North Carolina. Pursuant to the notice, plaintiffs' motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, and motion to strike or convert into a motion for summary judgment, were heard. Although represented by counsel, defendant South Carolina Electric & Gas Company ("SCEG") made no motions that were heard. A short initial pre-trial conference involving all parties also ensued. After studying the briefs of the parties and hearing their oral arguments, the Court concludes that the motion to dismiss for lack of subject matter jurisdiction should be granted and, as a result, the motion to strike or convert and the motion to dismiss for failure to state a claim should be dismissed as moot.

### Discussion

Plaintiffs brought this action against CPL and SCEG in 1977 alleging violations of the antitrust laws, specifically §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. They claim that the defendants, and others not named as defendants here, conspired to and actually monopolized the power production market by, among other things, preventing plaintiffs from entering that market. Defendants deny the allegations and

CPL has counterclaimed for abuse of process and tortious interference with its business relations, both of which causes of action are grounded in North Carolina law. These counterclaims arise primarily out of two occurrences: the 1974 application by North Carolina Electric Membership Corporation ("NCEMC") to the Federal Power Commission to obtain the license of the Walters Hydroelectric Development ("Walters"), and the institution by all plaintiffs of the instant antitrust suit.

■■■ Plaintiffs and defendants agree that if jurisdiction for the Court to hear these counterclaims exists, it must be found in the Court's ancillary jurisdiction. If the counterclaims are compulsory, see Fed.Rule Civ.Proc. 13(a), then the Court's ancillary jurisdiction exists even though there is no federal question or diversity jurisdiction. Conversely, if the counterclaims are permissive, see Fed.Rule Civ.Proc. 13(b), then they must be dismissed. See generally, 6 Wright & Miller, Federal Practice and Procedure § 1409 (1971). Whether a counterclaim is compulsory or permissive is governed in this Circuit by a resolution of the four tests applied in Sue & Sam Mfg. Co. v. B–L–S Constr. Co., 538 F.2d 1048, 1051–53 (4th Cir. 1976). See also Gammons v. Domestic Loans of Winston-Salem, Inc., 423 F.Supp. 819, 821 (M.D.N.C.1976). Before applying those tests to the present facts, the Court notes that its determination of whether the counterclaims arise out of the transaction or occurrence which comprises the subject matter of the plaintiffs' antitrust claim is to be governed by the Supreme Court's definition of "transaction" in Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926). There the Court said that the word is to be given a flexible meaning, which "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." Id. at 610, 46 S.Ct. at 371 (defining old Equity Rule 30).

1. Are the issues of fact and law raised by the antitrust claim and the tort counterclaims largely the same?

■■■ The elements of a § 1 Sherman Act violation are proof of "interstate or foreign commerce, two or more parties, an agreement, a restraint of trade, and the unreasonability of such restraint." Unibrand Tire & Product Co. v. Armstrong Rubber Co., 429 F.Supp. 470, 474 (W.D.N.Y. 1977). Proof of a § 2 violation requires a showing that defendant possesses monopoly power and that it willfully acquired or maintained such power. Structure Probe, Inc. v. Franklin Institute, 450 F.Supp. 1272, 1281 (E.D.Pa.1978). Abuse of process consists of an ulterior purpose in the use of process and an act in the use of that process not proper in the ordinary prosecution of the proceeding. Edwards v. Jenkins, 247 N.C. 565, 567, 101 S.E.2d 410, 412 (1958). Tortious interference has as its essential elements: a valid contract between plaintiff and a third person; knowledge of the defendant that the contractual relationship existed; intentional inducement by the defendant to the third person not to perform under the contract; and an absence of justification for that inducement. Childress v. Abeles, 240 N.C. 667, 673, 84 S.E.2d 176, 181 (1954). If the tort is based on interference with future relations, the plaintiff must show lack of justification for inducing a third party to refrain from entering into a contract with the plaintiff which contract would have ensued but for the interference. Spartan Equipment Co. v. Air Placement Equipment Co., 263 N.C. 549, 558, 140 S.E.2d 3, 11 (1965).

■■■ It is clear from the above list of elements that the issues of law and fact involved in the antitrust and state law claims are separate and distinct. The only overlap the Court perceives is, perhaps, the question of reasonableness. For instance, CPL may try to show that the prices it charged the plaintiffs for various power exchange services were reasonable, and thus it committed no antitrust violation. CPL might also offer that evidence to show, rather indirectly, that the plaintiffs had an ulterior motive for filing their antitrust suit. Thus, it is clear that the issues of fact and law raised by the main action and the

counterclaims are in no way "largely the same."

2. Would *res judicata* bar a subsequent suit on CPL's counterclaims, absent the compulsory counterclaim rule?

As the Fourth Circuit implicitly recognized in *Sue & Sam*, this test is considerably broader than the traditional boundaries of the doctrine of *res judicata*. 538 F.2d at 1052 (". . . if not on the grounds of *res judicata*, then on the grounds of estoppel by judgment, or collateral estoppel, or related doctrines, however called."). *Accord,* Wright, Federal Courts § 79 (1976). Although the Fourth Circuit cited § 68 of the Restatement, Judgments (1942), in discussing this question, the Court is persuaded that § 58 of the Restatement is more on point. Comment c to that section states that:

"Where the same facts constitute a ground of defense to the plaintiff's claim and also a ground for a counterclaim, and the defendant alleges these facts as a defense but not as a counterclaim, and after litigation of the defense judgment is given for the plaintiff, the defendant is precluded from maintaining an action against the plaintiff based on these facts."

Section 68, on which the Court relied in *Sue & Sam,* states that

"(1) Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action. . . ."

Since Comment c to § 58 states that the rule set out therein "is in accordance with the rule as to collateral estoppel stated in § 68," the clear implication of Comment c is that the facts which constitute a ground of

defense and a ground for a counterclaim must be essential to the judgment for the plaintiff in order for that judgment to stand as a bar to the use of those facts as the basis for a later suit by the defendant. In the present case, again focusing on the issue of the reasonableness of the charges levied by CPL for various power exchange services, the Court cannot say that the question of reasonableness constitutes a ground for a defense to the antitrust claims and a ground for a counterclaim based on either abuse of process or tortious interference. It may constitute an entire theory of defense to antitrust liability based on the particular charges in question, but due to the slight probative value of those charges as they relate to ulterior motive, it is much less than an entire theory or ground of either counterclaim.[1] In effect, all that can be said of the facts surrounding the question of reasonableness is that they comprise some slight evidence of the plaintiffs' ulterior motive in filing its application before the FPC[2] and the instant antitrust action. Thus, even if such facts are litigated adversely to CPL in this suit, it will hardly foreclose a successful action against NCEMC and others for abuse of process or tortious interference. For example, in connection with the 12(b)(6) motion, CPL referred to the remarks of Heyward McKinney, Manager of the Pee Dee Electrical Membership Corporation, in whose deposition he allegedly stated that "forcing CP&L to sell nuclear generating facilities to NCEMC was a primary purpose of filing an antitrust suit." Defendant CPL's Brief in Opposition to Plaintiffs' Motion to Dismiss for Failure to State a Claim at 2 n. 10. Such evidence, if true, would be vastly more probative of ulterior motive than evidence that CPL's charges were reasonable.

---

1. The Court's interpretation of the term "ground of defense" to mean a theory of defense is strengthened by the factual context in *Sue & Sam*, where the defense and counterclaim were not only based on identical facts but also comprised an entire theory of defense and counterclaim. In addition, each of the illustrations following Comment c of § 58 involves the same situation.

2. The Court assumes, without deciding, that the application for the Walters license could be the basis for an abuse of process claim. That assumption is not without some doubt, however.

Based on the above reasons, the Court concludes that *res judicata* and/or related doctrines would not bar a subsequent suit by CPL based on the counterclaims it has put forward here.[3]

3. Will substantially the same evidence support or refute the antitrust claim as well as the counterclaims?

Without rehashing the same arguments dealt with under the second question above, the Court is of the opinion that the same evidence would certainly not support or refute the antitrust suit and the counterclaims. The only possible exception to this conclusion might be the issue of reasonableness of CPL's activities, but as stated before, it is highly doubtful that a finding of reasonableness would demand a finding of ulterior motive. Indeed, a finder of fact might conclude that CPL's acts were quite reasonable *and* that the plaintiffs filed their license application and antitrust action without any ulterior motive. Thus, this question must also be answered in the negative.

4. Is there a logical relationship between the main action and the counterclaims?

CPL asserts that the attitude which provoked the license application and the antitrust suit developed over a much longer period of time than plaintiffs would have the Court to believe. It urges that the failure of the plaintiffs to acquire generating facilities is bound up with the license application and the negotiations for CPL's nuclear facilities which CPL apparently has refused to sell to the plaintiffs, all of which serves as the basis of the antitrust action and the counterclaims. It, therefore, concludes that the logical relationship between the antitrust claim and the counterclaims is quite strong, and that even though the first three questions have been answered in the negative, the answer to this last question should be dispositive of the motion to dismiss. Defendant CPL in this regard places great emphasis on the case of *Great Lakes Rubber Corp. v. Herbert Cooper Co., Inc.,* 286 F.2d 631 (3rd Cir. 1961). That case, however, involved a different factual scenario than does this case. There the plaintiff brought an action against Cooper claiming various acts of unfair competition.[4] Cooper answered Great Lakes' complaint, denying the contentions and making two counterclaims. One was based on alleged antitrust violations, the other on what CPL interprets as abuse of process.[5] Cooper then moved the Court to dismiss the complaint for lack of jurisdiction due to an absence of diversity. That motion was granted, but in answering the counterclaims of Cooper, Great Lakes repeated the allegations of unfair competition set out in its original complaint. Cooper then sought to have the counterclaims of Great Lakes dismissed for lack of ancillary jurisdiction, but the Third Circuit overruled the trial court's order granting that motion.

By contrast, our case involves a plaintiff who has brought an antitrust action and a defendant who seeks to counterclaim for abuse of process. In *Great Lakes* the party bringing the antitrust action and the abuse of process claim were one and the same. The motion to dismiss in *Great Lakes* was based on the argument that the abuse of process claim had no relation to the state-based unfair competition claims, while in our case the argument of CPL is that there is a logical relation between the abuse of

3. The Court's conclusion in this regard is strengthened, or at least made easier by the representation of plaintiffs' counsel at oral argument that, in any subsequent state court suit, plaintiffs in this action would not argue that CPL's failure to bring these counterclaims should be barred. Counsel also opined that this Court's ruling on the *res judicata* question would be the law of the case and thus would bind a state court judge should the issue arise at a later date for some reason. The Court of course makes no ruling on that question but it would seem to be a logical position to take, as well as a fair one.

4. Although it is clear that the original action was grounded in state law, and not in the federal antitrust laws, it is not clear whether the allegations were based on violations of state statutory or common law principles.

5. The Court assumes, without deciding, that CPL's characterization of this claim is accurate.

process claim and the federal antitrust action.[6] Thus *Great Lakes* cannot control the result in this case.

 To the contrary, the Court is persuaded that *Great Lakes* should be given little weight in the resolution of the 12(b)(1) motion. The main claim "falls within the very narrow scope of a federal statute, the defendant's within the very broad range of state remedies." *Roberts v. National School of Radio & Television Broadcasting*, 374 F.Supp. 1266, 1271 (N.D.Ga.1974). Plaintiffs' claim is pursuant to a stated federal legislative policy. *Id.* Should the Court allow the counterclaims to proceed, there almost certainly would have to be severed trials of the antitrust claims and the counterclaims.[7] The Court also notes that in an analogous context the majority of courts faced with the question have held a counterclaim for the amount due on a loan transaction to be permissive in a suit in which the plaintiff seeks redress for alleged violations of the Truth in Lending Act. 15 U.S.C. § 1601 *et seq. See e. g., Basham v. Finance America Corp.*, 583 F.2d 918 (7th Cir. 1978); *Meadows v. Charlie Wood, Inc.*, 448 F.Supp. 717 (M.D.Ga.1978); *Daughtrey v. First Bank & Trust Co. of South Bend*, 435 F.Supp. 218 (N.D.Ind.1977); *Gammons v. Domestic Loans of Winston-Salem, Inc.*, 423 F.Supp. 819 (M.D.N.C.1976). The policy reasons operative in that context are influential in the present as well, and the Court concludes for all of the reasons heretofore stated that there is no logical relationship between the antitrust claims and the counterclaims.

Since each of the four tests has been resolved in favor of the plaintiffs, the Court concludes that the counterclaims are permissive. There being no ancillary, or other, jurisdiction for the Court to hear such claims, the Court concludes that they should be dismissed for lack of subject matter jurisdiction. In so doing, the Court further and expressly determines pursuant to Fed. Rule Civ.Proc. 54(b) that there is no just reason for delay in entering a final judgment as to the counterclaims in favor of the plaintiffs, and that judgment in their favor should be entered forthwith.

 Due to the resolution of the 12(b)(1) motion, the Court also concludes that the motion to strike or convert and the motion to dismiss for failure to state a claim should be dismissed as moot.

### Discovery Schedule

Immediately following the oral arguments on the above motions, a discussion ensued in which the parties expressed the joint opinion that they could not give the Court an accurate prediction of when depositions and other discovery could take place. The reason for this inability was the vast amount of documentary materials that counsel for the parties are in the process of collecting, reviewing and sending to opposing counsel. Later on the same day of oral argument, the Court signed an order limiting the time period in which such discovery of documentary materials should occur. In conjunction with that order the Court now concludes that the parties should continue to proceed with the schedule enunciated therein, and that they also should be prepared to meet with one another and with the Court on or after October 1, 1979, for a further scheduling conference. At such conference, it is the present intention of the Court that an initial pre-trial order will be entered.

---

**6.** It may well be that the purpose of the antitrust laws and the state unfair competition cause of action in *Great Lakes* are similar, but that makes *Great Lakes* no more than analogous, and not controlling as defendant claims.

**7.** Plaintiffs' motive in filing an antitrust action has absolutely no relevance to the existence of liability of the defendant, but if NCEMC's·mo-

tives were as CPL claims, and if CPL were allowed to introduce evidence of an improper motive during the trial of the antitrust claims, it would have great prejudicial impact in the minds of a jury. Should the jury base a verdict for CPL on that ground, it would pervert the Congressional purpose behind the antitrust laws.