**HOSPITAL BUILDING COMPANY, Plaintiff,**

v.

**The TRUSTEES OF REX HOSPITAL, a corporation; Joseph Barnes; Richard Urquhart, Jr., Defendants.**

**Civ. No. 4048.**

United States District Court,
E. D. North Carolina,
Raleigh Division.

May 27, 1980.

John K. Train, III, of Alston, Miller & Gaines, Atlanta, Ga., Charles Gordon Brown, Chapel Hill, N. C., and William M. Trott of Young, Moore, Henderson & Alvis, Raleigh, N. C., for plaintiff.

Thomas W. Steed, Jr., Noah H. Huffstetler, III, and William D. Dannelly of Allen, Steed & Allen, Raleigh, N. C., and John H. Anderson, Jr., and Michael E. Weddington of Smith, Anderson, Blount & Mitchell, Raleigh, N. C., for defendants.

*On Plaintiff's Motion to Dismiss Counterclaim for Lack of Subject Matter Jurisdiction and On Severance of a Counterclaim Issue*

MALETZ, Judge:[1]

Plaintiff, the operator of a proprietary hospital in Raleigh, N. C., has brought this action under sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1–2) alleging that the defendants are engaged in an unlawful conspiracy to restrain and monopolize trade and commerce in the furnishing of medical-surgical hospital services in the Raleigh area to the exclusion and damage of plaintiff's business.[2] A defendant, the Trustees of Rex Hospital (Rex) filed an answer and a counterclaim seeking the recovery of damages from plaintiff alleged to have been sustained as a result of abuse of process and defamation by plaintiff. Plaintiff in turn has moved to dismiss the counterclaim for lack of subject matter jurisdiction.

█ The parties agree that Rex's counterclaim is based on actions arising under the laws of North Carolina and that since diversity between the parties is lacking, jurisdiction, if it exists, must be found in the court's ancillary jurisdiction. And ancillary jurisdiction exists only if the counterclaim is compulsory, that is "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" within the meaning of rule 13(a) of the Federal Rules of Civil Procedure. On the other hand, if the counterclaim is permissive (see rule 13(b)), then it must be dismissed since it lacks an independent jurisdictional basis.[3] See generally 6 Wright and Miller, *Federal Practice and Procedure* § 1409 (1971); 3 Moore's *Federal Practice*, ¶¶ 13.15[1]; 13.-19[1] (1979).

In determining whether a counterclaim is compulsory (i. e., whether it arises out of the transaction that is the subject matter of plaintiff's claim), the Supreme Court has

1. Judge of the United States Customs Court sitting by designation pursuant to 28 U.S.C. § 293(b).

2. The Supreme Court has previously held in this case that the amended complaint adequately alleged a restraint of trade substantially affecting interstate commerce within the meaning of the Sherman Act and that dismissal of the amended complaint for lack of federal jurisdiction was therefore inappropriate. *Hospital Building Co. v. Trustees of Rex Hospital et al.,* 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976).

3. Rule 13(a) covers compulsory counterclaims and provides in part that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim * *."

Rule 13(b) covers permissive counterclaims and provides that "[a] pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim."

emphasized that the word "transaction" has a flexible meaning which may include a series of many occurrences that depend not so much on the immediateness of their connection, but upon their logical relationship. *Moore v. New York Cotton Exchange*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926). The Court in *Moore* specifically recognized that if essential facts alleged by one party enter into and constitute a part of the cause of action set forth in the opposing party's counterclaim, that counterclaim is compulsory even though it may not be precisely identical to the federal cause of action and even though the counterclaim embraces additional allegations.

■ More particularly, whether a counterclaim is compulsory within the guidelines thus set out in *Moore* is governed in this Circuit by *Sue & Sam Mfg. Co. v. B-L-S Const. Co.*, 538 F.2d 1048 (4th Cir. 1976). There the Fourth Circuit stressed that rule 13(a) "should be given a broad realistic interpretation to avoid a multiplicity of suits." *Id.* at 1051. And to assist in a determination of whether a counterclaim is compulsory, the court in *Sue & Sam* indicated that the district courts should consider the following four tests none of which is to be determinative:

1. Are the issues of fact and law raised by the claim and the counterclaim largely the same?

2. Would *res judicata* bar a subsequent suit on the counterclaims, absent the compulsory counterclaim rule?

3. Will substantially the same evidence support or refute the claim as well as the counterclaim?

4. Is there any logical relation between the claim and the counterclaim?

■ It is against this background that we now consider in greater detail plaintiff's claim and defendant Rex's counterclaim. In its amended complaint, plaintiff states that it operates the Mary Elizabeth Hospital, a 49-bed proprietary hospital in Raleigh, which offers general medical-surgical hospital services to the public. Defendant Rex is a North Carolina corporation which oper-

ates Rex Hospital, a private, tax-exempt hospital also located in Raleigh. The other two defendants are the administrator of Rex and one of its individual trustees. The amended complaint alleges, among other things, that the defendants and several conspirators engaged in a conspiracy in violation of the antitrust laws to prevent the plaintiff from expanding the capacity of the Mary Elizabeth Hospital from 49 to 140 beds. As part of the conspiracy, it is alleged that the defendants and their co-conspirators engaged in a bad faith scheme to delay and, if possible, prevent the issuance to plaintiff of a certificate of need by the Medical Care Commission of the State of North Carolina—a certificate which was then required by North Carolina law as a prerequisite for hospital expansion.

The amended complaint states that ultimately the Medical Care Commission granted a certificate of need for the requested expansion of the Mary Elizabeth Hospital. Nevertheless, according to the amended complaint, the defendants and their alleged co-conspirators have taken further steps to block the implementation of the expansion, including the filing of a baseless, bad faith appeal to the State court from the decision of the Medical Care Commission and the instigation of false and malicious publicity about plaintiff and the public need for the additional hospital beds proposed to be constructed by plaintiff. Plaintiff claims that the alleged conspiracy has delayed expansion of the Mary Elizabeth Hospital and seeks as damages treble the amount of direct costs and loss of revenue attributable to the delay, together with an injunction against a continuation of the alleged conspiracy.

Turning now to Rex's counterclaim, it alleges that plaintiff planned to use whatever means it could to discourage and deter any opposition to the petition it filed with the Medical Care Commission to obtain a certificate of need for the expansion of the Mary Elizabeth Hospital. Pursuant to this plan, it is alleged that plaintiff threatened the defendants with an antitrust suit unless they discontinued their opposition to this petition. The counterclaim further alleges

that plaintiff filed the present antitrust complaint with the ulterior motive of intimidating the defendants in an effort to cause them to withdraw the appeal they filed in the State court from the decision of the Medical Care Commission granting plaintiff a certificate of need and for the purpose of denying the defendants free access to the administrative and judicial channels and procedures available to them. The counterclaim also alleges that the filing of plaintiff's antitrust action was surrounded by pre-trial activity by plaintiff which was designed to further intimidate the defendants by unjustifiably criticizing them to the public through the news media. By the institution and continued maintenance of the present action, it is claimed that plaintiff has abused valid process and has caused Rex special damages.

The counterclaim alleges, in addition, that on the day it filed the complaint, plaintiff made statements to the news media to the effect that the defendants had committed the acts alleged in the complaint and had acted in bad faith and with improper and dishonest motives in opposing plaintiff's petition for a certificate of need. These statements, the counterclaim states, constituted slander and caused damage to Rex's credit, good-will and business relationship.

The counterclaim alleges that as a result of the claimed abuse of process and defamation, Rex has been delayed and caused increased expenses in its efforts to construct additional and new hospital facilities in the Raleigh area. Beyond that, the counterclaim states that the alleged abuse of process and defamation were committed recklessly, wilfully and maliciously for the purpose of damaging Rex. In these circumstances, the counterclaim seeks recovery of punitive as well as actual damages.

1. *Are the issues of fact and law raised by the claim and counterclaim largely the same?*

Bearing in mind these elements of the claim and counterclaim, we proceed now to the four tests set out in *Sue & Sam*. First are the issues of fact and law raised by the

antitrust claim and counterclaim for abuse of process and defamation largely the same? On this question, the parties agree that there is a general dissimilarity in the ultimate legal issues raised by plaintiff's antitrust claims and the counterclaim for abuse of process and defamation. Nevertheless, it would appear that there are substantial issues which overlap. Thus, significant underlying facts for the claim and counterclaim involve the series of actions in connection with the petition for a certificate of need, the proceedings before the Medical Care Commission, and the filing of the State court appeal from the Commission's decision. Moreover, should plaintiff be successful in its antitrust claim, this would in all likelihood be a defense to the counterclaim for defamation.

Instructive is *Albright v. Gates*, 362 F.2d 928 (9th Cir. 1966). There plaintiff claimed that defendants had slandered it in uttering defamatory words about plaintiff's oil security selling operations. Defendants filed a counterclaim against plaintiff and against additional new parties for the price paid for alleged worthless oil rights or securities. The court held that the counterclaim was a compulsory one both as to plaintiff and the new parties on the ground that there was "sufficient identity or overlapping of the events of the factual background to put the whole together as a transaction." 362 F.2d at 929. See also *Sun Shipbuilding & Dry Dock Co. v. Virginia Electric & Power Co.*, 69 F.R.D. 395 (E.D.Pa.1975). Similar considerations are present here. Here substantial issues overlap in plaintiff's antitrust claim and Rex's counterclaim for abuse of process. Further, the most significant ultimate issue of fact and law involved in plaintiff's antitrust claim is also a significant issue in Rex's counterclaim for defamation.

2. *Would res judicata bar a subsequent suit on the counterclaim absent the compulsory counterclaim rule?*

With respect to this test, a final determination of plaintiff's complaint for antitrust violations would materially resolve Rex's counterclaim for defamation. The defense

by Rex to plaintiff's claim of antitrust violations is that there were no such violations. Similarly, as a part of its counterclaim for defamation, Rex asserts that the allegations of the complaint are false. Plaintiff has necessarily responded to the counterclaim allegations by denying their truth. Thus, if plaintiff is successful on its antitrust claim, collateral estoppel, if not *res judicata*, would bar Rex, in a subsequent defamation action, from denying the truth of plaintiff's allegations of antitrust violations.

It is true that a final determination of plaintiff's antitrust suit would not be *res judicata* of Rex's counterclaim for abuse of process. However, that claim for abuse of process is so intertwined with the claim for defamation as to make severance inappropriate. Among other things, both involve the question of malice and both involve proof of punitive damages. And on each of these two elements the facts and legal issues are identical.

3. *Will substantially the same evidence support or refute plaintiff's claim as well as Rex's counterclaim?*

Rex says that it intends to present evidence in defense of the action showing that it did not violate the antitrust laws and that plaintiff suffered no damages as the result of any conduct by Rex. In particular, Rex asserts that its evidence in defense of the alleged antitrust violations will also tend to show that there was lack of any credible evidence on which plaintiff could base its allegations and that plaintiff used frivolous allegations to further ulterior and improper purposes. Such evidence in defense of plaintiff's antitrust claim would of course have probative value on Rex's counterclaim for abuse of process and defamation.

What is more, the jury considering the claim and counterclaim must necessarily learn about the various proceedings before the Medical Care Commission; Rex's appearance therein; allegations made in the complaint; plaintiff's evidence of antitrust violations and damages and Rex's defenses; and the plaintiff's and Rex's plans for and completion of construction of new hospital facilities. Thus it would appear that sub-

stantial evidence will be introduced that both supports the counterclaim for abuse of process and simultaneously refutes plaintiff's claim of antitrust violations and damages.

4. *Is there any logical relation between the antitrust claim and Rex's counterclaim?*

As noted above, there is substantial similarity between the evidence in Rex's defense of the plaintiff's claim of antitrust violations and damages and the evidence Rex must present in the prosecution of its counterclaim. See, e. g., *City of Cleveland v. Cleveland Electric Illuminating Co.*, 570 F.2d 123 (6th Cir. 1978). This duplication in and of itself demonstrates the logical relationship of the complaint for antitrust violations and the counterclaim. As the Supreme Court noted in *Moore*, the fact that additional allegations must be proved for Rex to recover on the counterclaim does not eliminate their compulsory nature. *Moore v. New York Cotton Exchange, supra*, 270 U.S. at 610, 46 S.Ct. at 371.

In fact, the Second Circuit has on several occasions held that counterclaims which are based on allegations that the subject complaint was one of a series of harrassing maneuvers against the defendant counterclaimants are compulsory. *Newburger, Loeb & Co. v. Gross*, 563 F.2d 1057 (2d Cir. 1977), *cert. den.* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978); *United Artists Corp. v. Masterpiece Productions*, 221 F.2d 213 (2d Cir. 1955). In *Newburger, Loeb*, the plaintiff corporation received the assignment of a claim by a client of a brokerage firm. This assigned claim was the subject of a complaint alleging that the defendant had churned an account of the assignors and caused substantial damages. The defendant alleged that the claim was taken by the predecessor in interest to the corporate plaintiff in bad faith and for the sole purpose of creating a colorable claim against defendant to induce defendant to accept other improper and unrelated demands. The court held that defendants' counterclaims, based on the alleged bad faith conduct of plaintiffs in obtaining an assignment of and initiating the subject claim for

the purpose of harrassment and improper inducement, was compulsory. In *United Artists Corp. v. Masterpiece Productions, supra,* one of the main issues was whether a counterclaim alleging unfair trade practices and conspiratorial activities by plaintiff and additional defendants was compulsory. The Second Circuit held that the counterclaims were compulsory where one of the elements of the counterclaim was an allegation that the plaintiff's original action for copyright infringement and unfair trade practices was one of a series of harrassing maneuvers by plaintiff designed to interfere with defendants' exploitation of rights acquired on the advice of the additional defendants.

In this case there seems a similar nexus between the counterclaim and the complaint. Just as in *Newburger, Loeb* and *United Artists,* Rex's evidence in defense of plaintiff's allegations of antitrust violations and resulting damages appears closely related to Rex's counterclaim. Thus, the counterclaim alleges that plaintiff's complaint was an intimidating maneuver constituting tortious conduct against Rex. Hence it would appear that in the course of trying plaintiff's claim and Rex's defenses thereto, the reasoning process of the jury will require it to substantially determine Rex's rights pursuant to its counterclaim. See *City of Cleveland v. Cleveland Electric Illuminating Co., supra,* 570 F.2d at 127.

In support of its motion for dismissal, plaintiff relies heavily on *North Carolina Electric Membership Corp. v. Carolina Power & Light Co.,* 85 F.R.D. 249 (M.D.N.C. 1979), *affirmed per curiam* 618 F.2d 102 (4th Cir. March 26, 1980) (unpublished) (hereafter *NCEMC*). There, plaintiffs brought an antitrust action alleging defendants and others conspired to and actually monopolized the power production market by, among other things, preventing plaintiffs from entering that market. Defendants denied the allegations of the complaint and Carolina Power & Light counterclaimed for abuse of process and tortious interference with its business relationships, both of

which causes of action were grounded on North Carolina law. These counterclaims arose primarily out of two occurrences: an application filed in 1974 by plaintiff North Carolina Electric Membership Corp. to the Federal Power Commission to obtain the license for the Walters Hydroelectric Development[4] and the institution by all plaintiffs of the instant antitrust suit. The court held that the counterclaims were permissive and not compulsory for the reasons that the issues of fact and law involved in the antitrust and State law claims were separate and distinct; success on the monopolization claim would not have barred a subsequent suit for the State law violations; the same evidence would not have supported or refuted the antitrust claim and counterclaim; and there was no logical relationship between them.

I believe, however, that the situation in *NCEMC* bears little resemblance to the situation here. For here—in contrast to *NCEMC*—there are substantial issues which overlap, including the series of actions in connection with the petition for a certificate of need, the proceedings before the Medical Care Commission, and the filing of the State court appeal from the Commission's decision. Also, a final determination in favor of plaintiff would collaterally estop Rex from denying the truth of plaintiff's allegations of antitrust violations. Moreover, it would appear that substantial evidence will be introduced that both supports the counterclaim for abuse of process and simultaneously refutes plaintiff's claim of antitrust violations. And finally there is a logical relation between the counterclaim and the complaint. In sum, unlike the counterclaim in the present case, the counterclaim in *NCEMC* seems far removed in time and circumstance from the transaction or occurrence that is the subject matter of the allegations of the plaintiff's complaint.

Also distinguishable is *Harris v. Steinem,* 571 F.2d 119 (2d Cir. 1978). In that case, plaintiff sued defendants for securities law violations arising out of the repurchasing of

---

4. The court assumed without deciding that the application for the Walters license could be the

basis for an abuse of process claim. *Supra,* note 2.

plaintiff's stock in a magazine. Defendants counterclaimed for libel which consisted of the filing of a lawsuit and the making of several public statements regarding the lawsuit which referred solely to the allegations contained in the complaint which was a matter of public record. The court held that while plaintiff's success on the main claim would probably have defeated the counterclaim, various essential issues involved in the claim and counterclaim were so different that the logical relationship between them was at best attenuated. Additionally, the court was of the view that the case fell within the well established narrow line of decisions holding that counterclaims which are based *solely* on the filing of the main complaint and allegedly libelous publication thereafter are not compulsory. In this connection, the court added that "postponement of suits that will ordinarily not arise if plaintiff wins the main action and avoidance of the 'dangerous potentialities of counterclaims [in the nature of] malicious prosecutions as a defensive stratagem' are strong policy reasons supporting that line of cases." 571 F.2d at 125.

It is apparent against this background that the counterclaim here is quite different from the counterclaim involved in the *Harris v. Steinem* line of cases. In the first place, a significant portion of the present counterclaim involves alleged abuse of process and on this score is similar to *Newburger, Loeb & Co. v. Gross, supra,* 563 F.2d 1057, and *United Artists Corp. v. Masterpiece Productions, supra,* 221 F.2d 213. Second, although as in *Harris v. Steinem* the other portion of the present counterclaim involves defamation based on publication of the allegations of the complaint, that claim seems to intertwined with the claim for abuse of process that a separate trial for each would involve a needless duplication of judicial effort.

Lastly, plaintiff relies on *National Bowl-O-Mat Corp. v. Brunswick Corp.,* 264 F.Supp. 221 (D.N.J.1967), an antitrust action in which the defendant counterclaimed for defamation, alleging that plaintiff had widely publicized its litigation allegations that defendant violated the antitrust laws. The trial judge dismissed the counterclaim for failure to state a cause of action for defamation under State law. Given that circumstance, the court commented that "[t]here is no need here to determine whether this is a compulsory or permissive counterclaim or whether this Counterclaim 'arises out of the transaction' which is the subject matter of this litigation." 264 F.Supp. at 225. Thus that case is irrelevant to any issue here.

In summary, the court concludes for the foregoing reasons that plaintiff's motion to dismiss Rex's counterclaim for lack of subject matter jurisdiction should be denied.

*Separate Trial of a Counterclaim Issue*

■ Albeit the court holds that it has ancillary jurisdiction of Rex's counterclaim, the court pursuant to rule 42(b) will on its own motion—to avoid prejudice and in the interest of sound judicial administration—require a separate trial of all allegations concerning the abuse of process counterclaim that are contained in Rex's answer No. 6 to plaintiff's supplemental interrogatories.[5]

That answer—which was served on February 22, 1980—alleges that in 1977 and 1978 plaintiff and its attorneys gave Rex's attorneys false answers to interrogatories which substantially increased the amount of damages claimed by plaintiff in the present action. According to Rex's answer No. 6, this alleged false claim for increased damages caused a delay in the issuance of revenue bonds for Rex's new hospital facilities with resultant monetary loss to Rex for which it seeks recovery.

---

**5.** Rule 42(b) provides in part that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counter- claim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, * * *."

More specifically, Rex's answer No. 6 to plaintiff's supplemental interrogatories alleges that in 1977 and 1978 plaintiff's attorneys gave Rex's attorneys unsigned and unverified answers to defendants' interrogatories which assertedly contained a number of patent falsehoods, including a statement that "[plaintiff] was injured in its business by reason of defendant's antitrust violations in the proximate amount of $13,318,944 before trebling." Such claimed damages, the answer alleges, aggregated after trebling a sum which was in excess of the entire amount which Rex planned to realize from the sale of its revenue bonds to finance the construction of new hospital facilities. In addition, it is stated that such claimed damages were in excess of five times the total amount of damage initially claimed by plaintiff in this action.

Rex's answer No. 6 further alleges that counsel for Rex disclosed the substance of these unsigned answers of plaintiff to the underwriters and were informed that Rex's bond issue could not proceed as scheduled in the face of the enormous amount of damages alleged against Rex in the present action.

Thereafter, the answer states, in the latter part of December 1977 plaintiff filed a signed and verified supplemental answer to interrogatories alleging that Charter Medical Corporation (plaintiff's former parent), although not a party to this action, was entitled to recover from the defendants the sum of $10,258,515.

Continuing, Rex's answer No. 6 notes that on March 19, 1978 Rex filed a civil action in this court against Charter and Hospital Corporation of America (the present parent of plaintiff) for abuse of process (with jurisdiction based on diversity). The 1978 action, Rex says in its answer No. 6, was based in part on Charter's alleged participation with plaintiff in making the above-referenced false allegations in the present action. Rex's answer notes that the complaint in the *Charter* case contends that the publication of these allegations constituted an actionable abuse of process resulting in damages to Rex by

virtue of the effect of these allegations on the latter's bond issue.

Rex additionally states in its answer No. 6 that in the present action plaintiff moved to amend its complaint by adding Charter as a party-plaintiff but that that motion was opposed by Rex and denied by the court. Rex's underwriters, the answer says, were immediately notified of this order of the court whereupon, on May 16, 1978, the purchase order for the bonds in question, which had initially been scheduled to be signed on February 14, 1978, was actually signed. Rex further alleges in its answer No. 6 that during the period of time in which the signing of the purchase contract was delayed from February 14, 1978 to May 16, 1978, the bond market for municipal securities of the type issued on behalf of Rex declined dramatically. As a result, the answer states, Rex was forced to pay additional interest on the funds borrowed to finance its new hospital facilities in the amount of $1,920,000 over the life of its bonds. Finally, Rex's answer claims that in the present action Rex is entitled to recover that sum reduced to its present value as damages in its counterclaim against plaintiff.

As previously indicated, the court has concluded that to avoid prejudice and in the interest of sound judicial administration a separate trial is required for that aspect of Rex's counterclaim involving all the issues covered by Rex's answer No. 6. This conclusion is compelled by the following considerations:

In the first place, through its answer to plaintiff's interrogatories, Rex has injected into this case for the first time a new set of factual allegations with respect to liability. These allegations materially alter the defense by plaintiff to Rex's counterclaim and would appear somewhat outside the scope of the pleadings and previous answers to interrogatories. More important, the new claims thus set forth by Rex disclose additional areas of discovery which, the court believes, would impose on plaintiff the substantial time, expense and burden of deposing (and perhaps redeposing) numerous wit-

nesses within the short period of time remaining prior to the scheduled commencement of this trial on July 7, 1980.[6] Obviously, the court could order plaintiff to trial on these issues without the benefit of further discovery. But this course would be highly prejudicial to plaintiff, since it would force plaintiff to defend a claim about which it learned only a short time before trial and after the close of discovery. Alternatively, the court could reopen discovery and permit plaintiff to take and retake the depositions and other discovery required. But this would be highly disruptive of an already tight pretrial schedule. Another option is the postponement of the entire trial until the necessary discovery is complete. This option, too, would be most inappropriate considering the extensive delay that has already occurred in this case, and the fact that the court (with the agreement of the parties) is already committed to a trial starting on July 7.

The unacceptability of all these alternatives leaves but one which is compatible with the goal of resolving the issues between the parties—and that is to try separately the antitrust case and the issues in Rex's counterclaim that are raised by the latter's answer No. 6. A principal justification for trying claims separately is that one is ready for trial but the other is not. E. g., *Dow Corning Corp. v. Surgitek, Inc.*, 61 F.R.D. 578, 580 (E.D.Wis.1973); *Andrew Corp. v. Justice Associates, Inc.*, 17 F.R. Serv.2d 1243, 1244 (N.D.Ill.1973). And that is precisely the situation here.

Nor will Rex be prejudiced by the separate trial of this portion of its counterclaim. As noted above, the matters covered by Rex's answer No. 6 are already the subject of a lawsuit Rex has filed in this court against Charter and the Hospital Corporation of America. See *The Trustees of Rex*

Hospital v. Hospital Corporation of America and Charter Medical Corporation, Civil No. 78–93–CIV–5 (E.D.N.C.). Hence, by joining the issues raised by Rex's answer No. 6 with Rex's pending lawsuit against Charter, there will be no problem of duplicate discovery. And, too, it is in the interest of sound judicial administration and judicial economy that identical issues be tried together. See, e. g., *Transmirra Products Corp. v. Monsanto Chemical Co.*, 27 F.R.D. 482 (S.D.N.Y.1961).

A further consideration calling for severance is that there is no substantial overlap between the issues in plaintiff's antitrust claim and this portion of Rex's counterclaim. On the contrary, it seems apparent that the issues involved, the proof to be adduced and the witnesses who will testify in connection with the antitrust case differ sharply from the issues involved, the proof to be adduced and the witnesses who will testify in connection with this portion of Rex's counterclaim. See, e. g., *Washington Whey Co. v. Fairmont Foods Co.*, 72 F.R.D. 180 (D.Neb.1976); *Reading Industries, Inc. v. Kennecott Copper Corp.*, 61 F.R.D. 662 (S.D.N.Y.1974); *Value Line Fund v. Marcus*, 161 F.Supp. 533, 537–8 (S.D.N.Y.1958); *Martin v. Wyeth, Inc.*, 96 F.Supp. 689, 697–8 (D.Md.1951), *affirmed*, 193 F.2d 58 (4th Cir. 1951); *Container Co. v. Carpenter Container Corp.*, 9 F.R.D. 89, 91–2 (D.Del.1949). The confusion that would result absent separation is apparent.

### Order

In view of the foregoing, it is hereby ordered:

1. That plaintiff's motion to dismiss Rex's counterclaim for lack of subject matter jurisdiction be denied; and

---

**6.** In addition to its motion to dismiss the counterclaim for lack of jurisdiction, plaintiff has filed a companion motion seeking imposition of sanctions against Rex by striking the above answer No. 6 and prohibiting the introduction at trial of evidence relating to the events described in that answer. Alternatively, plaintiff's motion requests the court to allow discovery to be reopened, with the expenses therefor to be borne by Rex. Because of the severance here required, the motion to impose sanctions has by separate order been denied as moot. Further, plaintiff's motion in the alternative to allow reopening of discovery has also been denied but without prejudice to any discovery required in connection with the separate trial of the issues raised by Rex's answer No. 6.

2. That all issues involved in Rex's answer No. 6 to plaintiff's supplemental interrogatories be severed from the present action and be tried jointly with *The Trustees of the Rex Hospital v. Hospital Corporation of America and Charter Medical Corporation*, Civil No. 78–93–CIV–5 (E.D.N.C.).