Timothy C. **HARRISON**

v.

Martin L. **GRASS**, et al.

No. CIV. CCB–03–0912.

United States District Court,
D. Maryland.

Feb. 10, 2004.

William J. Murphy, John J. Connolly, Murphy and Shaffer, Thomas M. Wood, IV, Neuberger Quinn Gielen Rubin and Gibber PA, Baltimore, MD, for Plaintiff.

650 A.2d 246, 248 (1994), and neither party has raised any argument against enforcement of the provision.

Rebecca H. Ewing, William Horace Jeffress, Baker Botts LLP, Washington, DC, Price O. Gielen, Thomas M. Wood, IV, Neuberger Quinn Gielen Rubin and Gibber PA, Andrew Marc Dansicker, Schulman Treem Kaminkow Gilden and Ravenell PA, Jason M. St John, Neuberger Quinn Gielen Rubin and Gibber PA, Baltimore, MD, Tammi Markowitz, Walter M. Phillips, Jr., Hoyle Fickler Herschel and Mathes LLP, Philadelphia, PA, Robert Edward Gough, Miller Miller and Canby, Rockville, MD, for Defendant.

T Christine Pham, Rosenberg Martin Funk Greenberg LLP, Baltimore, MD, for Movant.

### *MEMORANDUM*

BLAKE, District Judge.

This Memorandum opinion addresses two motions to dismiss counterclaims (docket nos. 62 & 86) in the case of Timothy Harrison and his estranged brother-in-law and former business partner, Martin L. Grass. Mr. Grass, once the President and Chief Operating Officer of the Rite Aid drugstore chain, has pled guilty to federal criminal charges based in part on grand jury testimony and other evidence provided by Mr. Harrison.[1] Prior to his guilty plea, Mr. Grass allegedly took various actions to pressure Mr. Harrison and influence his testimony. One such action, according to Mr. Harrison, was the entry of multi-million dollar confessed judgments against Mr. Harrison in Baltimore County Circuit Court in February 2003. Mr. Harrison removed those cases to this court in March 2003. Then, he counterattacked, filing a complaint against Mr. Grass and various associates and related entities alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, a conspiracy to violate Mr. Harrison's civil rights, and various related state law claims. In July 2003, this court granted a motion to set aside the confessed judgments and denied a motion to dismiss Mr. Harrison's complaint. Now several defendants, including Mr. Grass, Mr. Grass's father Alexander Grass, and certain related business entities, as well as other entities that were not named as defendants in the Complaint, have filed counterclaims.[2] Mr. Harrison has moved to dismiss them.

The gist of the counterclaims is that "Harrison is a thief who stole from his partners." (Answer by A. Grass et al. to Am. Compl. at 48, Docket no. 73; Answer by M. Grass et al. to Am. Compl. at 28, Docket no. 74.) Whereas Mr. Harrison alleges that his cooperation with law enforcement caused his partners, Martin Grass and Alexander Grass, to expel him from various real estate ventures he had profitably managed, the counterclaim plaintiffs attribute Mr. Harrison's expulsion to the discovery of "unauthorized distributions to [Mr. Harrison] under the guise of, *inter alia*, 'tax effect distributions,' 'guaranteed payments,' and 'draws.'" (A. Grass Answer at 56–57 & ¶ 32; M. Grass Answer at 33 & ¶ 24.) To recover these alleged illegal payments, the counterclaim plaintiffs assert state law claims of conversion, fraud, breach of fiduciary duty, and breach of contract. In addition, Martin Grass, though not the other counterclaim plaintiffs, has asserted a claim that Mr. Harrison owes him $500,000 on a promissory note that Mr. Harrison

---

1. Mr. Harrison's Complaint includes extensive allegations regarding Mr. Grass's wrongdoing. The federal indictment to which Mr. Grass pled guilty also includes an account of Mr. Grass's actions. (*See* Pl.'s Mot. to Preserve Evidence Ex. A, Docket no. 2.)

2. Several individuals who were named as defendants have not joined the counterclaims. Numerous business entities that were not defendants have joined as counterclaim plaintiffs.

signed on or about July 1, 1990 and reaffirmed in November 2001. (M. Grass Answer ¶¶ 25–30, 55–61.) The counterclaim plaintiffs stated these claims in two different forms: first, as a stand-alone document titled "Counterclaim and Request for Jury Trial," which they filed on July 14, 2003; and second, as part of their Answers filed on September 17, 2003. Mr. Harrison moved to dismiss the first set of filings on August 29, 2003, and then moved again on October 31, 2003 to dismiss the counterclaims included in the Answers. Both motions have now been fully briefed, and no oral argument is necessary. Local Rule 105.6.

Although he initially sought to dismiss all the counterclaims, Mr. Harrison now concedes that Mr. Grass's debt claim may survive a motion to dismiss.[3] As to the remaining counterclaims, Mr. Harrison argues, among other things, that the claims are untimely, that the court lacks jurisdiction over the counterclaims, and that Pennsylvania's "gist of the action" doctrine bars the tort counterclaims. Because I am not persuaded that there are grounds to dismiss all the counterclaims, I will deny Mr. Harrison's overall motion to dismiss. I will, however, reserve a ruling on the arguments that are specific to particular counterclaims and counterclaim plaintiffs.

## I.

Mr. Harrison's arguments implicate Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Insofar as Mr. Harrison challenges the subject matter jurisdiction of the court under Rule 12(b)(1), "[t]he moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond,*

*Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans v. B.F. Perkins Co.,* 166 F.3d 642, 647 (4th Cir.1999). As for the argument that the counterclaim plaintiffs have failed to state claims that entitle them to relief, "[t]he purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir.1999) (internal quotation marks and alterations omitted). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir. 1997). Consequently, a motion to dismiss under Rule 12(b)(6) may be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Edwards,* 178 F.3d at 244.

## II.

Two of Mr. Harrison's arguments, if correct, would permit all the disputed counterclaims to be dismissed. First, Mr. Harrison contests the court's jurisdiction, arguing that even with respect to the counterclaim plaintiffs who were defendants in the original suit, the counterclaims are permissive rather than compulsory. Whereas compulsory counterclaims—claims that arise from the "same transaction or occurrence that is the subject matter of the opposing par-

---

3. Mr. Harrison initially argued that the debt claim was time-barred, but he appears to have dropped this argument, conceding that Mr. Grass's allegation that the debt was reaffirmed within the limitations period is sufficient for purposes of a motion to dismiss. (*See* Pl.'s Reply at 5 n. 4, Docket no. 93.)

ty's claim," Fed.R.Civ.P. 13(a)—are forfeited if they are not litigated along with the complaint, permissive counterclaims may be raised only if they have "an independent jurisdictional base," *Sue & Sam Mfg. Co. v. B–L–S Constr. Co.*, 538 F.2d 1048, 1051 (4th Cir.1976); *see also Slaby v. Berkshire*, 928 F.Supp. 613, 616 (D.Md.1996), *aff'd*, 110 F.3d 60, 1997 WL 151894 (4th Cir.1997) (unpublished table opinion). Second, Mr. Harrison argues that the claims are untimely because the initial stand-alone filings were a "legal nullity" under the Federal Rules of Civil Procedure, and Maryland's three-year statute of limitation expired before they filed their Answers.[4] This second argument, like the first, turns on whether the claims are permissive or compulsory: in the Fourth Circuit, "a compulsory counterclaim relates back to the time of the filing of the plaintiff's complaint," *Kirkpatrick v. Lenoir County Bd. of Educ.*, 216 F.3d 380, 388 (4th Cir.2000), and Mr. Harrison's complaint was filed well within the limitations period.[5] Accordingly, I will turn first to the nature of the counterclaims.

### A.

Determining whether counterclaims are compulsory or permissive requires four separate inquiries:

(1) Are the issues of fact and law raised in the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? and (4) Is there any logical relationship between the claim and counterclaim?

*Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir.1988). It is not necessary to "answer all these questions in the affirmative for the counterclaim to be compulsory"; rather, the inquiries serve as a "guideline." *Id.* "Where ... the same evidence will support or refute both the claim and counterclaim, the counterclaim will almost always be compulsory." *Id.* at 332. This "same evidence" test, however, is not "the exclusive determinant of compulsoriness under [Rule 13(a)] because it is too narrow a definition of a single transaction or occurrence." *Id.* A counterclaim may arise from the same "transaction or occurrence," and thus be compulsory under Rule 13(a), "even though the evidence needed to prove the opposing claims may be quite different." *Id.*

Noting that the fact-finder could conceivably uphold both the claims and the counterclaims in this case, Mr. Harrison argues that the counterclaims are permissive under *Painter.* "[T]he resolution of the Counterclaims," he explains, "will in no way determine the outcome of the Complaint." (Pl.'s Mem. at 8, Docket no. 86.) This argument reflects the narrow focus

4. As both parties recognize, Maryland's statute of limitations applies to the counterclaims. A federal district court adjudicating state law claims applies the choice of law rules of the jurisdiction in which it sits, *see Barry v. Donnelly*, 781 F.2d 1040, 1042 n. 3 (4th Cir.1986), and "[t]he Maryland courts have followed the general rule that the statute of limitations of the forum state applies even when that state's choice of law rules require that another state's substantive law be applied." *Sherwin–Williams Co. v. Artra Group, Inc.*, 125 F.Supp.2d 739, 756–57 (D.Md.

2001). Maryland's default limitations period is three years. *See* Md.Code Ann., Cts. & Jud. Proc. § 5–101.

5. The counterclaim plaintiffs do not appear to dispute Mr. Harrison's assertion that the three-year limitations period began to run in August 2000 when Mr. Grass "discovered" the alleged thefts (A. Grass Answer ¶ 32; M. Grass Answer ¶ 24). The period therefore expired in August 2003, after the Complaint was filed but before the defendants filed their Answers.

on factual incompatibility that the *Painter* court warned against in criticizing the "same evidence" test. In fact, "if essential facts alleged by one party enter into and constitute a part of the cause of action set forth in the opposing party's counterclaim, that counterclaim is compulsory even though it may not be precisely identical to the federal cause of action and even though the counterclaim embraces additional allegations." *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 86 F.R.D. 694, 695–96 (E.D.N.C.1980) (discussing *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926)). The counterclaims in this case are compulsory because, even granting that the claims and counterclaims are not mutually exclusive, the balance of the *Painter* factors favors adjudicating them in a single proceeding.

First, while the legal and factual issues may not be "largely" the same, there are significant points of overlap. In particular, questions as to whether Mr. Harrison stole and why he was expelled are likely to bear importantly on both sets of claims. Second, even if full and fair adjudication of Mr. Harrison's claims would not preclude the counterclaim plaintiffs from later arguing that he had stolen from the businesses, "the res judicata test cannot be the controlling one." *Painter*, 863 F.2d at 333. As the Fourth Circuit has observed, "[i]f the limits of the compulsory counterclaim are no broader than res judicata, then [Rule 13(a) ] would be superfluous." *Id.* Third, and more importantly, both sets of claims will require substantial evidence regarding Mr. Harrison's role in the businesses, his success in managing them, the reasons for his departure, and other similar issues. Moreover, the claims and counterclaims are likely to involve conflicting accounts of the reasons for Mr. Harrison's departure. Thus, as in an Eastern District of North Carolina case cited favorably in *Painter*, "it would appear that substantial evidence will be introduced that both

supports the counterclaim ... and simultaneously refutes [the] plaintiff's claim." *Hosp. Bldg. Co.*, 86 F.R.D. at 698, *cited in Painter*, 863 F.2d at 331; *see also Banner Indus. of N.Y., Inc. v. Sansom*, 830 F.Supp. 325, 327 (S.D.W.Va.1993) (concluding that the first and third *Painter* tests were satisfied where "[a] primary factual issue ... will be the nature of the business transactions between the parties").

Finally, in what is perhaps the most telling inquiry in this case, there is a strong logical relationship between the claims and counterclaims. *Cf. Hosp. Bldg. Co.*, 86 F.R.D. at 695–96 ("[T]he Supreme Court has emphasized that the word 'transaction' has a flexible meaning which may include a series of many occurrences that depend not so much on the immediateness of their connection, but upon their logical relationship." (citing *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926))). As I noted above, it is conceivable that the fact-finder in this case might believe both that the defendants conspired and that Mr. Harrison stole, such that both sets of claims would be satisfied. Nevertheless, the counterclaim plaintiffs' version of events—that Mr. Harrison's "self-righteous claims of intimidation and victimization are nothing more than a cover up for his own thefts and incompetence" (A. Grass Answer at 50; M. Grass Answer at 29)—is at least inconsistent with Mr. Harrison's theory. Indeed, even if they had not asserted the counterclaims, the defendants probably would have presented evidence of the purported thefts to rebut Mr. Harrison's allegation that his termination stemmed from an illegal conspiracy. Such "duplication" of evidence in the context of the defense to the plaintiff's claims and the prosecution of the counterclaims "in and of itself demonstrates the logical relationship" between the claims and counterclaims. *Hosp. Bldg. Co.*, 86 F.R.D. at 698; *see also Sue & Sam,*

538 F.2d at 1053 (holding that a logical relationship existed where the "claims arose at the same time" and were "occasioned" by the same occurrence, such that "[t]he proof of the claim ... and especially its defense required proof of many of the same facts as were necessary to the proof of the counterclaim"). Simply put, the purported thefts, if proven true, would form an integral part of the story of Mr. Harrison's business dealings with the defendants. Because that story is the basis for Mr. Harrison's complaint, adjudicating the claims and counterclaims at once would advance the "general purpose" of Rule 13(a)—"to have all related actions heard at one time," *Painter*, 863 F.2d at 334—whereas adjudicating them separately would "ignore the value of having the same factfinder resolve all issues with an eye for consistency and an appreciation for the total context of the case," *id.* at 333. *See also Banner Indus.*, 830 F.Supp. at 328 (concluding that a logical relationship existed where both sets of claims arose "from the souring of [the parties'] business relationship" and allowing separate proceedings "would result not only in duplication of evidence and effort but also wasted judicial resources").[6]

Thus, under Fourth Circuit case law, the counterclaims arose from the same transaction or occurrence as Mr. Harrison's claims, and the counterclaims are compulsory under Rule 13(a).

## B.

As I noted at the outset, both of Mr. Harrison's arguments for dismissal of all the counterclaims depend on his view that the counterclaims are permissive. Having rejected that premise, I must now reject the broader arguments. First, the counterclaims, being compulsory, relate back to the filing date of the complaint, which in this case was March 28, 2003, less than three years after Mr. Grass "discovered" the purported thefts in August 2000 (A. Grass Answer ¶ 32; M. Grass Answer ¶ 24). Maryland's three-year statute of limitations thus poses no bar to the counterclaims. Second, because the counterclaims are compulsory, the court may adjudicate them as a matter of its supplemental jurisdiction under Rule 13(a) and 28 U.S.C. § 1367(a). It is immaterial whether there would be federal jurisdiction had the counterclaims been filed in a separate lawsuit. *See, e.g., Shanaghan v. Cahill*, 58 F.3d 106, 109

---

**6.** Mr. Harrison relies heavily on *Al–Abood v. El–Shamari*, 217 F.3d 225 (4th Cir.2000), to argue that the counterclaims in this case are not compulsory. Not only does this case not discuss the *Painter* inquiries or even cite to *Painter*—it summarily rejected the defendants' argument in two sentences in a footnote, *see id.* at 234 n. 5—but its facts are distinguishable. The plaintiff in that case had pursued claims of fraud, breach of fiduciary duty, and RICO violations, among other things, based on several alleged fraudulent schemes. *See id.* at 230–31. The defendants counterclaimed, alleging that they had entrusted the plaintiff with some $2.5 million, which she spent but promised to pay back; they contended that the lawsuit was "an effort to avoid repaying the [defendants]." *Id.* at 231. *Al–Abood* is similar to this case in that it

involved claims and counterclaims that arose from an extended personal and business relationship between the parties. In *Al–Abood,* however, the counterclaims involved a distinct transaction that played no role in the alleged fraudulent schemes, except insofar as it supposedly motivated the plaintiff to file specious claims (a proposition that appears doubtful considering that the jury found in the plaintiff's favor on her claims). By contrast, in this case, the counterclaims involve the very same business transactions at issue in the complaint; indeed, they relate to the reasons for Mr. Harrison's expulsion from the businesses, one of the central acts of the purported conspiracy. The logical and factual nexus between the claims and counterclaims is, therefore, much stronger in this case than in *Al–Abood.*

(4th Cir.1995) ("Supplemental jurisdiction ... allows parties to append state law claims over which federal courts would otherwise lack jurisdiction, so long as they form part of the same case or controversy as the federal claims."); *White v. County of Newberry*, 985 F.2d 168, 171 (4th Cir.1993) (noting that supplemental jurisdiction exists where state law claims "arose out of a common nucleus of operative fact" (internal quotations omitted)).

### III.

Mr. Harrison also makes several arguments that are specific to particular claims and parties. In particular, he contends that: (1) the tort counterclaims fail to state remediable claims because Pennsylvania law "precludes [claimants] from recasting ordinary breach of contract claims into tort claims," *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa.Super.2002); (2) the individual counterclaim plaintiffs, Martin Grass and Alexander Grass, lack standing to pursue conversion claims based on thefts from entities involved in this suit; and (3) the claims of the counterclaim plaintiffs other than the original defendants cannot be compulsory and therefore may not relate back to the filing date of the complaint.[7] Even if the court accepted these arguments, some of the counterclaims would survive, opening Mr. Harrison to discovery regarding the allegation that he "stole" from the counterclaim plaintiffs. Because resolving these arguments would have little practical effect at this juncture, I will reserve a ruling on these issues by denying the motion to dismiss without prejudice.

7. In his first motion to dismiss, Mr. Harrison argued at length that the counterclaims were a "legal nullity" because they had not been filed in the context of a "pleading" under Rule 13. This issue is moot now that the defendants have filed the counterclaims in

Mr. Harrison's motions will therefore be denied, in keeping with this Memorandum opinion.

A separate Order follows.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby Ordered that:

1. the plaintiff's Motion to Dismiss Counterclaim (docket no. 62) and Motion to Dismiss the Counterclaims Filed on September 17, 2003 (docket no. 86) are **DENIED**, as stated in the accompanying Memorandum; and

2. copies of this Order and the accompanying Memorandum shall be sent to counsel of record.

their Answers, which clearly are "pleadings." Mr. Harrison's earlier motion also made various additional standing arguments that he concedes are now moot due to amendments to the defendants' allegations. (*See* Pl.'s Reply at 2 n. 2, Docket no. 93.)