CITY OF CLEVELAND,
Plaintiff-Appellant,

v.

The CLEVELAND ELECTRIC
ILLUMINATING COMPANY,
Defendant-Appellee.

Nos. 77–3017 and 77–3310.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 8, 1977.

Decided and Filed Feb. 16, 1978.

Jack M. Schulman, Vincent C. Campanella, Robert D. Hart, Cleveland, Ohio, James B. Davis, Hahn, Loeser, Freedheim, Dean & Wellman, Malcom C. Douglas, Acting Director of Law, Cleveland, Ohio, for plaintiff-appellant.

John Lansdale, Jr., Squire, Sanders & Dempsey, Cleveland, Ohio, Richard A. Miller, Donald H. Hauser, The Cleveland Electric Illuminating Co., Cleveland, Ohio, for defendant-appellee.

Before PHILLIPS, Chief Judge, and WEICK and PECK, Circuit Judges.

WEICK, Circuit Judge.

The City of Cleveland (City) has appealed from a summary judgment entered against it by the District Court on Counts 2 and 3 of the Second Counterclaim filed against the City by The Cleveland Electric Illuminating Company (CEI), which judgment was made final under Fed.R.Civ.P. 54(b).

I

The City had filed an antitrust action in the Federal District Court against defendants, CEI, Duquesne Light Company, Ohio Edison Company, Pennsylvania Power Company and Toledo Edison Company.[1] In its complaint the City alleged acts of conspiracy to monopolize and to restrain trade in the electric power generating market, in violation of the Sherman Act, 15 U.S.C. §§ 1 & 2, and prayed for damages and injunctive relief.

CEI filed an answer and two counterclaims, only the second of which is at issue here. Count 2 of the Second Counterclaim alleged that the City had failed to pay CEI the purchase price of electric power supplied by CEI to the City's municipal electric light plant, and the cost of construction and installation for the City of a permanent 138 KV interconnection over which the current was supplied, pursuant to certain Federal Power Commission (FPC) orders and a contract entered into between the parties.

Two additional counterclaims, styled Counts 3 and 4 of the Second Counterclaim, were subsequently filed, each alleging nonpayment of charges for electric power supplied to the City during later periods. The City filed answers to Counts 2 and 4, but filed no answer to Count 3.

On motion of defendant CEI, summary judgment was entered in favor of CEI against the City on Counts 2 and 3 in a memorandum and order of the District Court dated August 4, 1976, and judgment was entered on September 21. The Court granted summary judgment on Count 4 on February 24, 1977 and judgment was entered on April 7, following a joint stipulation of the parties with respect to the amount owed.

From these judgments plaintiff City now appeals. The appeal in case No. 77–3017 is from the judgments on Counts 2 and 3 of CEI's Second Counterclaim; the appeal in case No. 77–3310 is from the judgment entered on Count 4. Because the issues concerned in the two appeals are identical they will be considered together.

II

The sole issue in the City's appeals is the claim that CEI's counterclaims were not compulsory counterclaims within the meaning of Fed.R.Civ.P. 13(a), and that therefore the District Court lacked subject-matter jurisdiction over them. The City did not question that it owed CEI the amounts for which judgments were entered.

We disagree with the City's contentions, and accordingly we affirm the judgments of the District Court. We hold first, that CEI's counterclaims were compulsory counterclaims and were within the ancillary jurisdiction of the District Court; and second, in any event and independently, we hold

---

1. The defendants other than CEI are not parties to this appeal.

that the District Court had its jurisdiction conferred by the Federal Power Act, 16 U.S.C. § 825p to entertain an action based on an order of the Federal Power Commission requiring the City to pay these charges.

On May 13, 1971 the City filed a complaint against CEI before the FPC, alleging anticompetitive acts by CEI and praying, *inter alia*, that CEI be required to construct at the expense of the City, an emergency permanent electrical interconnection between CEI's Electric Light Plant and the City's Municipal Electric Light Plant (MELP). The subsequent decision and order of the Administrative Law Judge (ALJ) found the City's charges of antitrust violations against CEI were unsupported by the evidence. He found:

> [T]he City's past inability to furnish reliable, dependable service on the MELP System ha[d] been due primarily to incompetent management and inefficient operation.

The ALJ did find, however, that the public interest required the construction, at the sole expense of the City, of an emergency 138 kilovolt permanent synchronous interconnection between the City's Lake Road Plant and CEI's Lake Shore Plant. Further, it was ordered that existing emergency service provided the City by CEI over an existing 69 KV temporary nonsynchronous open-switch interconnection should be continued until the new facilities were operational.

These orders were affirmed by the FPC in its Opinion No. 644, issued January 11, 1973, with the provision that the orders would not take effect unless both parties accepted the conditions imposed by the FPC and entered an agreement to that effect between themselves to govern the new service. Opinion No. 644 fixed the rates to be charged for the power to be sold via both the 138 KV and the 69 KV interconnections.

Further, noting that the "City ha[d] for some time refused to pay, or ha[d] been quite late in paying, certain bills rendered by CEI," for electric current supplied to the City, which current the City sold to its customers, the FPC ordered that an addi-tional five percent could be added to invoices unpaid after forty-five days. It was also ordered that if an invoice went unpaid for sixty days an additional charge of one percent of the amount of the original bill could be added for each unpaid month thereafter. This additional charge of one percent per month was intended, not as a penalty, but rather to compensate CEI for the cost of maintaining its working capital during a prolonged period of nonpayment.

In its Opinion No. 644–A, issued March 9, 1973, the FPC denied the City's application for rehearing and stay of its previous orders. The orders of FPC were appealed by the City to the United States Court of Appeals for the District of Columbia Circuit, and were in all respects affirmed except as to the rate structure which was remanded for further consideration. *City of Cleveland v. FPC*, 174 U.S.App.D.C. 1, 525 F.2d 845 (1976), *clarified and compliance ordered*, 561 F.2d 344 (D.C.Cir.1977).

CEI filed motions with the FPC on July 13, 1973 and on January 30, 1974, alleging the continued and repeated neglect and failure of the City to pay for power provided via the existing 69 KV interconnection, and seeking enforcement of the payment provisions of the previous FPC orders. On April 8, 1974 the FPC issued an order directing compliance with its previous orders, and ordered the City to make payment to CEI of all undisputed charges for past and future services, including any accrued interest, and also ordered the City to deposit in escrow any disputed amounts. The City has neglected to comply with this order.

The District Court found that the 1973 FPC orders and corresponding enabling legislation of the City Council were reduced to a contract between the City and CEI on April 17, 1975, and on May 4, 1975 service was initiated over the 138 KV interconnection. Under the relevant FPC orders and the contract entered pursuant thereto, CEI is required to maintain the 138 KV permanent synchronous interconnection in operation, and is powerless to control the amount of power which the City draws over it.

Having failed to obtain from the City payment for its power furnished as ordered by the FPC on April 8, 1974, CEI has sought recovery therefor in its counterclaims in the present case.

CEI alleged in Count 2 of its Second Counterclaim that the City had failed to make payment for power delivered from May 4, 1975 through November 30, 1975 in the principal amount of $5,808,593.11, and further that the City had failed to pay costs of construction of the new interconnection in the amount of $15,241, as was ordered by FPC. Count 3 alleged that the City had failed to pay charges due for the period from December 1, 1975 through February 29, 1976 in the principal amount of $3,701,-233.39. Count 4, pursuant to a stipulation of the parties, detailed unpaid charges for the period from March 1, 1976 through December 31, 1976 in the principal amount of $3,925,460.98. All of these items total the principal sum of $13,450.528.48, to which should be added interest and the additional charges authorized in the FPC order of January 11, 1973.

Summary judgment was granted by the District Court on all counts. Interest at six percent per annum from July 31, 1975 was imposed on the judgment for construction costs of the interconnection, and on the power charges at one percent per month from the closing date of each respective period. Although the judgment on Count 4 was silent on the matter of interest the evident intent of the Court to apply the interest charge is shown by its incorporation, as if fully rewritten, of its earlier order granting summary judgment on Counts 2 and 3.

The City did not oppose CEI's motion for summary judgment on Count 3. As before stated, with respect to Counts 2 and 4 the City claimed that the District Court lacked subject-matter jurisdiction over CEI's counterclaims. The Court held that the counterclaims were compulsory counterclaims to the antitrust action already properly before the Court, and thus were within the ancillary jurisdiction of the District Court. *Moore v. New York Cotton Exchange*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926).

We agree. Ancillary jurisdiction exists for the purposes of the promotion of judicial efficiency and economy, and complete justice to all parties to a controversy. *See* 13 Wright, Miller and Cooper, Federal Practice & Procedure § 3523 (1975). These same policies impelled the Supreme Court in *Moore* to effect a significant expansion of the scope of ancillary jurisdiction to encompass compulsory counterclaims. *See Southern Const. Co. v. Pickard*, 371 U.S. 57, 60, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962).

In *Moore* the plaintiff complained that his Odd-Lot Cotton Exchange was being denied cotton price quotations by defendant New York Cotton Exchange in violation of the Sherman Act. Defendant counterclaimed alleging that the quotations had been denied because plaintiff had been operating a fraudulent "bucket shop," in violation of defendant's rules, and further that plaintiff was purloining the quotations and using them in his business without any intention of paying for them. Both parties sought injunctive relief.

The Supreme Court affirmed the dismissal by the District Court of the antitrust action, and affirmed the order of that Court enjoining plaintiff from further appropriation of quotations without permission. The Court held first, that defendant's counterclaim was compulsory under Equity Rule 30, the predecessor to the present Fed.R. Civ.P. 13(a), which provided that an answer must state "any counterclaim arising out of the transaction which is the subject-matter of the suit;" and second, that complete justice could not be done without extending the District Court's jurisdiction to permit an injunction "restraining appellant from continuing to obtain by stealthy appropriation what the court had held it could not have by judicial compulsion."

It is by now well settled that all such compulsory counterclaims are within the ancillary jurisdiction of the federal courts, even if, considered alone, they would ordinarily be matters within the jurisdiction of state courts. *Baker v. Gold Seal Liquors,*

*Inc.*, 417 U.S. 467, 469 n.1, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974). Compulsory and permissive counterclaims are defined by Fed.R. Civ.P. 13 as follows:

(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

(b) Permissive Counterclaims. A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.

The rule generally followed in determining whether a counterclaim is compulsory is that stated in *Moore*, which defined "transaction" as follows:

"Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. [270 U.S. at 610, 46 S.Ct. at 371.]

*See Baker v. Gold Seal Liquors, Inc.*, 417 U.S. at 469 n.1, 94 S.Ct. 2504; 6 Wright and Miller, Federal Practice & Procedure § 1410 (1971). *Cf. Revere Copper & Brass, Inc. v. Aetna Cas. & Sur. Co.*, 426 F.2d 709, 715 (5th Cir. 1970).

In our opinion it was the view of the *Moore* Court that the policies of judicial economy and of doing complete justice to the parties require that the counterclaim be presented and that the Court entertain and decide it. In *Moore* it was stated at 610 of 270 U.S., at 371 of 46 S.Ct.:

The refusal to furnish the quotations is one of the links in the chain which constitutes the transaction upon which appellant here bases its cause of action. It is an important part of the transaction constituting the subject-matter of the counterclaim. It is the one circumstance without which neither party would have found it necessary to seek relief. Essential facts alleged by appellant enter into and constitute in part the cause of action set forth in the counterclaim. That they are not precisely identical, or that the counterclaim embraces additional allegations, as, for example, that appellant is unlawfully getting the quotations, does not matter. To hold otherwise would be to rob this branch of the rule of all serviceable meaning, since the facts relied upon by the plaintiffs rarely, if ever, are, in all particulars, the same as those constituting the defendant's counterclaim.

So too, in the present case, we approve the exhaustive factual analysis of the District Court, and we agree with its conclusion that "the allegations of the Complaint, in and of themselves, encompass and embrace the allegations of the Counterclaims."

It can hardly be denied that the determination of the City's antitrust claims would require the determination of both the benefits conferred by CEI as well as its alleged detriments. Inevitably, the reasoning process of the District Court would require it to substantially determine the rights of the parties under their contract. Thus the claims and counterclaims, as explained in *Moore*, arose out of the same "transaction," and the policies of judicial economy and of doing complete justice require that CEI not be sent to yet another forum for a second determination of the same matters.

Undisputed evidence established both the amount of power delivered to the City during the period of the alleged antitrust violations and its value under legally established rates. It established also the value of the interconnection. Thus the counterclaims presented an appropriate case for summary

judgment, and summary judgment was properly granted.

We note that several courts have reached like results on facts analogous to those presented here. *See Moore v. New York Cotton Exchange, supra; Albright v. Gates*, 362 F.2d 928 (9th Cir. 1966); *Interphoto Corp. v. Minolta Corp.*, 47 F.R.D. 341 (S.D. N.Y.1969); *Channel Marketing, Inc. v. Telepro Indus., Inc.*, 45 F.R.D. 370 (S.D.N.Y. 1968); *G & M Tire Co. v. Dunlop Tire & Rubber Corp.*, 36 F.R.D. 440 (N.D.Miss. 1964). *Cf. Weit v. Continental Ill. Nat'l Bk. & Tr. Co. of Chicago*, 60 F.R.D. 5, 8 (N.D.Ill. 1973).

### III

In addition to the foregoing there is an independent ground for jurisdiction in the court below, for if the judgment of the District Court was correct on any ground it is entitled to affirmance. *Dandridge v. Williams*, 397 U.S. 471, 475 n.6, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224 (1937). *Cf. Massachusetts Mut. Life Ins. Co. v. Ludwig*, 426 U.S. 479, 96 S.Ct. 2158, 48 L.Ed.2d 784 (1976).

■ Even if CEI's counterclaims were merely permissive and thus not within the ancillary jurisdiction of the District Court the counterclaims still presented a federal question within the Court's jurisdiction.

The Federal Power Act, 16 U.S.C. § 825p, provides:

The District Courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter of the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created [thereby], or to enjoin any violation [thereof] . . . . Any suit or action to enforce any [such] liability or duty . . . may be brought in . . . the district wherein the defendant is an inhabitant . . . .

*See California v. Oroville-Wyandotte Irrigation Dist.*, 411 F.Supp. 361 (E.D.Cal.1975), *aff'd*, 536 F.2d 304 (9th Cir. 1976); *Mississippi Power & Light Co. v. FPC*, 131 F.2d 148 (5th Cir. 1942); *Cleveland Elec. Illuminating Co. v. City of Cleveland*, 50 Ohio App.2d 275, 363 N.E.2d 759 (1976), *cert. denied*, —— U.S. ——, 98 S.Ct. 175, 54 L.Ed.2d 127 (1977).

The City contends that the counterclaim is based on contract and not on an order of the FPC. This contention appears to us to be without merit. FPC ordered the City to enter into the contract in order to be entitled to the 138 KV interconnection which the City sought. CEI filed motions with FPC on July 13, 1973 and on January 30, 1974, alleging the continued failure of the City to pay for power provided through the existing 69 KV interconnection, and seeking enforcement of the payment provisions of the previous FPC orders. As before stated, on April 8, 1974 FPC issued an order directing compliance with its previous orders and ordering the City to make payment to CEI of all undisputed charges for past and future services, including any accrued interest, and to deposit in escrow any disputed amounts. (App. 0150). Clearly this is a definite order to pay.

Instead of depositing the disputed amounts in a special escrow account as ordered by FPC, the City deposited such amounts in its own bank account. The City's own bank account can hardly be characterized as a special escrow account.

■ The fact the FPC filed suit against the City in the Federal District Court for the District of Columbia to enforce its order of April 8, 1974, does not preclude CEI from filing its counterclaim to enforce said order so long as the charges have remained unpaid and the order of FPC remains unenforced.

Under the statute the District Court had jurisdiction to entertain these counterclaims as enforcing the FPC orders of January 11 and March 9, 1973 (Nos. 644 and 644–A), and April 8, 1974, and the contract entered into pursuant thereto.

For the reasons stated, the judgments of the District Court are affirmed.

The City's motion for stay is denied without prejudice to renewal before the District Court upon showing good faith efforts to issue bonds, the proceeds of the sale of which are to be used to satisfy the judgments.

Upon remand the Court may determine the issues relating to any disputed amounts owing by the City.