W. J. USERY, Jr., Secretary of Labor,
United States Department of
Labor, Plaintiff,

v.

Jerry BRANDEL, Individually and d/b/a
Jerry Brandel Farm, Defendant.

No. G76–393 CA6.

United States District Court,
W. D. Michigan, S. D.

Aug. 18, 1980.

Carin A. Clauss, Sol. of Labor, Herman Grant, U. S. Dept. of Labor, Washington, D. C., John C. Nangle, Karl R. Overman (argued), Detroit, Mich., for plaintiff.

Walter Urick, Urick & Monton, Hart, Mich., for defendant Brandel.

Donald M. Bailey, Clary, Nantz, Wood & Van Orden, Grand Rapids, Mich., for intervenors.

## OPINION

BENJAMIN F. GIBSON, District Judge.

The Secretary brings this action to test the propriety under the Fair Labor Standards Act [hereinafter "FLSA" or "the Act"] of a "sharecropper" arrangement between Brandel and certain migrant agricultural workers. Consideration of the interesting questions presented by this cause must, however, abide the resolution of a motion to intervene brought by several of the so-called "sharecroppers," and yet another skirmish in a long-running discovery battle between the present parties.

Defendant Brandel operates several farms in Oceana County, Michigan. As evinced in the pleadings, much of Brandel's land is partially cultivated by migrant workers under contract to him. Although Brandel plants, fertilizes, and sprays the crops, the migrant workers are primarily responsible for the land in their charge. The Secretary seeks a judgment declaring that this arrangement violates the recording, minimum wage and hour, and child labor provisions of the applicable federal labor laws. Fair Labor Standards Act of 1938, §§ 6, 7, 11(c) and 12, 29 U.S.C. §§ 206, 207, 211(c) and 212. Brandel responds that the relationship is legitimate and mutually advantageous, and argues that the workers are "independent contractors" who operate "farms," and who therefore do not fall within the ambit of the mentioned labor law requirements. Fair Labor Standards Act of 1938, as amended, §§ 13(a)(6) & (c)(1), 29 U.S.C. §§ 213(a)(6) & (c)(1). The crux of the matter is whether or not the migrant workers are Brandel's "employees".

## I. INTERVENTION

Nine migrant workers who identify themselves as "independent contractors" to Brandel seek to intervene as defendants and counter-claimants under the terms of Fed.R.Civ.P. 24.[1] They parallel the facts

---

1. Fed.R.Civ.P. 24 provides in relevant part:

    **(a) Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

    **(b) Permissive Intervention.** Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive or-

and defenses asserted by Brandel, and seek a judgment declaring that their association with Brandel is exempt from the provisions which the Secretary seeks to enforce.

The applicants do not lay express claim to either intervention as of right, under Rule 24(a), or by permission, under Rule 24(b). Their supporting brief, while reproducing subpart (b), addresses considerations relevant to both without identifying them to either. The Secretary, in his opposing memorandum, treats the application as one for permissive intervention. (Brandel almost immediately consented to intervention.) In the interest of clarity, the Court will scout both paths to intervention under Rule 24, beginning at their common origin: the requirement that application be "timely".

### A. TIMELINESS

■ The applicants' motion was filed some ten months after the complaint, and an additional fourteen months elapsed before the Court received the applicants' supporting brief. Such mere passage of time, however, does not of itself render the application untimely. 7A C. Wright & A. Miller, Federal Practice & Procedure § 1916, at 574 (1972). Rather, "[t]imeliness is to be determined from all the circumstances. And it is to be determined by the Court in the exercise of its sound discretion; unless that discretion is abused, the Court's ruling will not be disturbed on review." *NAACP v. New York*, 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1972) (footnotes omitted). Primary attention must be focused

upon the stage of the proceedings at which application is made, *see id.* at 365, 93 S.Ct. at 2602, in order to assess whether "allowing intervention . . . will either (1) prejudice the rights of the existing parties to the litigation or (2) substantially interfere with the orderly processes of the Court."[2] *McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1072 (5th Cir. 1970) (permitting post–judgment intervention), *quoted in* 7A C. Wright & A. Miller, Federal Practice & Procedure § 1916, at 580–81 (1972); *see Hodgson v. UMW*, 473 F.2d 118, 129 (D.C. Cir.1972).

The applicant's alacrity in moving to protect his interests may also be pertinent, *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394–396, 97 S.Ct. 2464, 2469–2470, 53 L.Ed.2d 423 (1977), but the Secretary's argument that it is the "most critical factor" in the timeliness determination is not supported in this instance by a fair reading of *United Airlines*. There, the applicant sought "post–judgment intervention for the purpose of appeal," 432 U.S. at 395, 97 S.Ct. at 2470 (footnote omitted),[3] and the Court's opinion addressed the peculiar circumstances of intervention in such a procedural context. It should not be thought to control the more general situation of intervention sought while the case is still in progress, especially before trial has commenced.

■ Intervention after judgment has been entered carries with it inherent procedural disruption, and a high risk of prejudice to the original parties by undercutting litigation strategies planned without reference to an intervenor. It is well in such

---

der administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

**2.** These risks must be distinguished from those of delay and prejudice caused by the intervenor's *participation*, regardless of the point to which the suit has progressed. The Court must consider the latter in exercising its discretion to

allow *permissive* intervention; the former, while similar, arise under the question of *timeliness*, a determination which is a necessary but not sufficient prerequisite to intervention of either sort.

**3.** McDonald was an unnamed class member who sought to appeal the denial of class certification after final judgment had been entered. Interlocutory appeal of the order denying certification could not be had, so the intervenor was forced to await entry of final judgment in order to contest it. Since the motion to intervene was filed "within the time period in which the named plaintiffs could have taken an appeal," it was timely. 432 U.S. at 396, 97 S.Ct. at 2471.

cases to deny intervention to an applicant who does not act promptly to protect his interest in the case, once he learns of it. But if post–judgment intervention is sought with dispatch, a court may then consider, as did the Supreme Court in *United Airlines,* any adverse impact on expeditious procedure, or the original parties' rights, occasioned by intervention at that time. There are thus circumstances where it is proper to grant an application for post–judgment intervention. *See e. g.,* cases cited in *United Airlines,* 432 U.S. at 395 n. 16, 97 S.Ct. at 2470, and 7A C. Wright & A. Miller, Federal Practice & Procedure § 1916, at 582 n. 13 (1972).

■ When intervention is requested *before* judgment has been entered, however, there is no reason to automatically treat alacrity as the "most critical" of timeliness factors. Application to intervene may be made at any point along the procedural continuum. At the earlier stages of litigation, less preparatory work has been done and the configuration of issues and parties is likely still in flux. Intervention is then possible without much risk of prejudice or disruption. The fact that the applicant has not taken prompt affirmative steps to protect his interests should not, therefore, necessarily weigh heavily against his participation. The prospect of undue prejudice and disruption grows, however, as the case moves towards trial. More attention to the applicant's alacrity would then be warranted. *See FMC Corp. v. Keizer Equipment Co.,* 433 F.2d 654, 656–67 (6th Cir. 1970); *Bradley v. Milliken,* 460 F.Supp. 320, 322 (E.D.Mich.1978); *Mack v. General Electric Co.,* 63 F.R.D. 368, 369 (E.D.Pa.1974), *aff'd,* 535 F.2d 1247 (3rd Cir. 1976) (enunciating rule). But even then, intervention should not be denied if another party could be readily assimilated into the case. At any stage before judgment, then, knowing delay is pertinent only if the prospect of undue prejudice and procedural disruption first exists. Alacrity is then best treated as one

factor among several to be assessed by the Court. The Fifth Circuit has recently promulgated such a factor analysis of the timeliness determination under Rule 24. *Stallworth v. Monsanto Co.,* 558 F.2d 257, 263–68 (5th Cir. 1977).[4]

■ In the instant case, the applicants may well have learned of the action pending against Brandel long before they filed their motion. The Secretary does not argue that they did, but suggests that a hearing on the matter is required to determine that they did not. The Court need not pause to ponder this proposed inversion of the burden of going forward, for the year's delay, even if unjustified, does not render the application untimely. The suit has not advanced beyond early discovery, and is yet far from trial. The original parties will have ample opportunity to conduct discovery and plan their argument; few, if any, issues not now foreseen by the Secretary and Brandel will be interjected; there is no need to modify concluded proceedings to allow for the applicants' participation. Although tardy, the application does not prejudice the parties' rights, nor impede the orderly progress of the case, and is therefore not untimely.

## B. INTERVENTION OF RIGHT

■ In addition to timeliness, Rule 24(a)(2) imposes three conditions for intervention of right, which may be loosely identified as interest, practical impairment, and inadequate representation. It is apparent that the applicants have a strong, direct interest in the case, which will be ultimately determined by disposition of the pending suit, and which is not necessarily represented by defendant Brandel.

■ 1. Interest: Rule 24(a)(2) contemplates that "a significant protectable interest" in the pending litigation be required. *Donaldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971).

---

**4.** A thorough listing of factors pertinent to the timeliness determination is provided in Note, *The Timeliness Threat to Intervention of Right,* 89 Yale L.J. 586, 593 n.40 (1980). The Note also serves as a useful informal bibliography of recent work and leading cases discussing Rule 24.

At issue in the present case is the applicants' arrangement with Brandel, which they claim affords them greater recompense and satisfaction than would a more conventional farm labor contract. It is well–established that an applicant has "a significant protectable interest" in rights which may be affected by interpretation in a pending case, particularly when the employment relation is implicated. *Stallworth v. Monsanto Co.*, 558 F.2d 257, 268–69 (5th Cir. 1977) (seniority); *Martin v. Travelers Indemnity Co.*, 450 F.2d 542, 553–54 (5th Cir. 1971) (insurance coverage); *Atlantis Development Corp. v. United States*, 379 F.2d 818, 826–29 (5th Cir. 1967) (title to realty); *Textile Workers Union v. Allendale Co.*, 96 U.S.App.D.C. 401, 226 F.2d 765, 768 (1955) (en banc), *cert. denied*, 351 U.S. 909, 76 S.Ct. 699, 100 L.Ed. 1444 (1956) (minimum wage law); *General Motors Corp. v. Burns*, 50 F.R.D. 401, 403 (D.Haw.1970) (state regulation); *Ruby v. Pan–American World Airways, Inc.*, 252 F.Supp. 393, 395 (S.D.N.Y.), *appeal dismissed*, 360 F.2d 691 (2d Cir. 1966) (collective bargaining agreement).

2. Practical Impairment: It is patent that the applicants' ability to protect their interest will, as a practical matter, be impaired or impeded by the disposition of the pending action. The applicants wish to preserve their arrangement with Brandel. The Secretary seeks to enjoin all practices violative of the FLSA. To the extent he prevails, the existing "sharecropping" contracts may be directly jeopardized by this Court's decree. Even if not, Brandel may well be moved to modify or abandon his practice if he is required to comply with FLSA strictures. Such an economic effect has been deemed a practical impairment. *See Fleming v. Citizens for Albemarle, Inc.*, 577 F.2d 236, 238 (4th Cir. 1978), *cert. denied*, 439 U.S. 1071, 99 S.Ct. 842, 59 L.Ed.2d 37 (1979). Although the Court's ruling would not bind the applicants absent their participation, any future action they may initiate would labor under the oppressive weight of an adverse precedent on the same facts. The mere prospect of an undesired precedent has been identified as a practical impairment. *Natural Resources Defense Council v. United States Nuclear Regulatory Commission*, 578 F.2d 1341, 1345 (10th Cir. 1978); *Francis v. Chamber of Commerce of United States*, 481 F.2d 192, 195 n.8 (4th Cir. 1973).

3. Inadequate Representation: Rule 24(a)(2) proscribes participation if "the applicant's interest is adequately represented by existing parties." This hurdle may be overcome if "the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. UMW*, 404 U.S. 528, 538 n.10, 92 S.Ct. 630, 636, 30 L.Ed.2d 686 (1972). Practical, as well as formal, representation of the applicant's interest must be assessed. Advisory Committee Note to 1966 Amendment, Fed.R.Civ.P. 24(a). The applicants have here offered no showing that their interests are not adequately represented by their putative co–defendant. Brandel argues the same position as they do; there are no indications of collusion with the Secretary, disinterest in the case, or incompetence. Nevertheless, the pleadings reveal a more than minimal possibility that the applicants' interests diverge from those of the present defendant. Whatever Brandel's purpose in preferring to have his land worked by "sharecroppers" instead of "employees", it will be he, ·and not the applicants, who must comply with the FLSA should the Secretary prevail. His interest in resisting the Secretary may come to be one of avoiding this result. The applicants, for their part, desire to continue as sharecroppers; if they have any interest in FLSA requirements, it could well be to find some, but not all, applicable in their situation. This would not be the first time that the interests of farm labor and management have not been identical. In cases such as this, where an applicant's "interest is similar to, but not identical with, that of one of the parties . . . he ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee." 7A C. Wright & A. Miller, Federal Practice &

Procedure § 1909, at 524 (1972). The Court concludes that the prerequisites of Rule 24(a) are fulfilled, and that the applicants are consequently entitled to intervention of right.

## C. PERMISSIVE INTERVENTION

■ 1. Prerequisites: Given that an application is timely, the Court in its discretion may permit intervention under Rule 24(b)(2) if the applicant presents a "claim or defense" which has "a question of law or fact in common" with the main action. No one here suggests that there is no "question of law or fact in common." Indeed, the pleadings disclose that the factual allegations and legal claims of Brandel and the applicants are nearly coterminous. The applicants also present a parallel "claim or defense" which involves the "direct personal or pecuniary interest in the subject of the litigation" necessary for permissive intervention. *SEC v. United States Realty & Improvement Co.*, 310 U.S. 434, 459, 60 S.Ct. 1044, 1055, 84 L.Ed. 1293 (1940). Their economic interest in the outcome of the case is sufficient to fulfill this requirement. *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 135, 87 S.Ct. 932, 936, 17 L.Ed.2d 814 (1967); *Brooks v. Flagg Brothers, Inc.*, 63 F.R.D. 409, 415 (S.D.N.Y. 1966) (Gurfein, J.), and cases cited therein; *Groseclose v. Great Northern Railroad Co.*, 25 F.R.D. 181, 184 (D.Mont.1960) (union granted leave to intervene in action construing collective bargaining agreement). Under this liberal standard, "the intervenor–by–permission does not even have to be a person who would have been a proper party at the beginning of the suit . . . ." 7A C. Wright & A. Miller, Federal Practice & Procedure § 1911, at 539 (1972).[5]

■ 2. Discretionary Finding: The Court enjoys broad discretion in its decision to grant permissive intervention. *Brotherhood of Railroad Trainmen v. Baltimore & Ohio Railroad*, 331 U.S. 519, 524, 67 S.Ct. 1387, 1389, 91 L.Ed. 1646 (1947); *Afro American Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974). Even if the above prerequisites are satisfied, the Court must look to the circumstances as a whole to determine if participation is warranted. Rule 24(b) commands that the Court "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Numerous other factors may also be taken into account.

These relevant factors include the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case. The court may also consider whether changes have occurred in the litigation so that intervention that was once denied should. be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Spangler v. Pasadena City Board of Education*, 552 F.2d 1326, 1329 (9th Cir. 1977) (footnotes omitted).

■ Initially, it must be noted that the present parties in no way intimate that

---

**5.** The Secretary argues that a recent decision of the Sixth Circuit imposes the Rule 24(a) requirement of inadequate representation in cases of permissive intervention as well. *Penick v. Columbus Education Association*, 574 F.2d 889 (6th Cir. 1978). The Court declines to import this provision to the standards for intervention under Rule 24(b), where it does not appear. The *Penick* court approved a refusal to grant intervention as of right, because the applicant's "interests have been adequately represented by the existing parties," as well as the denial of permissive intervention on the

grounds of undue delay. *Id.* at 890–91. In concluding dictum, the court stressed that its decision did not prejudice the applicant's right "to seek intervention at a later date should it become apparent that [its] interests are not being adequately represented." *Id.* at 891. The context makes it plain that a renewed application to intervene *as of right* would be appropriate should the district court's reason for denying it cease to exist. *Penick* cannot be read to introduce inadequate representation as a requirement for permissive intervention.

their rights would be prejudiced by the applicants' participation. Defendant Brandel has consented to intervention; the Secretary argues only that the addition of nine parties–defendant would "result in considerable delay" which would be undue "because the movants raise no new issue and add nothing to the instant case." This reasoning finds some support in the case law.

It is easy enough to see what are the arguments against intervention where, as here, the intervenor merely underlines issues of law already raised by the primary parties. Additional parties always take additional time. Even if they have no witnesses of their own, they are the source of additional questions, objections, briefs, arguments, motions and the like which tend to make the proceeding a Donnybrook Fair. Where he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention.

*Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.*, 51 F.Supp. 972, 973 (D.Mass.1943) (Wyzanski, J.). *Accord, British Airways Board v. Port Authority of New York & New Jersey*, 71 F.R.D. 583, 585 (S.D.N.Y.), *aff'd mem.*, 556 F.2d 554 (2d Cir. 1976). It does appear that the applicants and Brandel would advocate the same, or a closely similar, interpretation of the FLSA at trial. Their case, however, presents circumstances which remove it from Judge Wyzanski's general rule.[6] In the first place, it is not certain that the applicants' interests will be fully articulated at trial by Brandel. Moreover, they will bring to the proceedings a point of view which will enrich the record in a matter which may well establish precedent and influence public policy. Their status as parties will render their appearance as witnesses and deponents more likely.[7] The very fact that they do not raise other issues and questions will serve to minimize possible protraction of the trial; collectively represented by one counsel, their role will be focused and coordinated, which will prevent the proceedings from devolving into a "Donnybrook Fair." Above all, the applicants have a tremendous stake in the outcome of a suit which could reshape the terms and conditions of their work lives. It is only fair that they be allowed a voice in a proceeding which holds such power over them.[8] Under all the circumstances, therefore, the Court concludes that the applicants' participation as parties–defendant is proper and desirable, and so grants their motion for permissive intervention under Rule 24(b).

[11] 3. Jurisdiction: The Secretary is doubtless correct in his argument that an application for permissive intervention must be supported by an independent basis for jurisdiction, both over the intervenor as a party, and for any newly raised causes of action he may bring. *Blake v. Pallan*, 554 F.2d 947, 955–56 (9th Cir. 1977); 7A C. Wright & A. Miller, Federal Practice & Procedure § 1917, at 592–93 (1972); 3B Moore's Federal Practice ¶ 24.18[1] (2d ed. 1980). This requirement ensures that the district courts' statutory jurisdiction will not be expanded by indirectly raising an

---

**6.** Judge Wyzanski went on to note that "against the considerations of orderliness and dispatch other factors must be weighed." He then proceeded to permit intervention. 51 F.Supp. at 974.

**7.** It appears that the applicants and their families spend only the summer cultivation season in Michigan, and make their permanent residence in the Southwest.

**8.** The notion that "the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard" is the rationale underlying intervention of right. *Hodgson v. UMW*, 473 F.2d at 130. "Intervention of right served the policy of mini-

mizing injustice to nonparties. . . . By contrast, permissive intervention under the Rules was a device aimed at promoting court convenience and efficiency, predicated on a desire to avoid a multiplicity of actions where possible. Although in particular cases the two goals may coincide, they are conceptually distinct." Note, *supra* note 4, at 587–88 (footnotes omitted). Whatever the primary purpose served by the first of these two goals, the Court does not believe it improper to count the desirability of involving all concerned parties as a factor weighing in favor of Rule 24(b) intervention by permission.

action which could not have originally been brought before them. It thus embodies the command of Fed.R.Civ.P. 82 that "[t]hese rules shall not be construed to extend or limit the jurisdiction of the United States district courts."

The applicants advance no jurisdictional basis for their participation. They rely only upon 28 U.S.C. § 2403, which pertains to intervention *by* the United States, and Rule 24, which of course affords no independent grounds for jurisdiction. In their proposed counterclaim, the applicants assert that "[j]urisdiction of this Counterclaim for Declaratory Judgment is conferred upon the Court by virtue of 28 U.S.C. § 2201 et seq., and by virtue of the jurisdiction obtaining in the primary cause." The Declaratory Judgment Act, however, does not of itself confer upon the federal courts any basis of subject matter jurisdiction. *American Airlines, Inc. v. Louisville and Jefferson County Air Board*, 269 F.2d 811, 824 (6th Cir. 1959). The primary cause is before the Court under jurisdiction specifically conferred by 29 U.S.C. § 217 to enjoin FLSA violations by *employers*. It is thus problematic whether the applicants could have been joined as defendants in the Secretary's suit. Either they are in fact Brandel's employees, and thus not liable for violations under 29 U.S.C. § 217, or, so the Secretary argues, they are employers in their own right, but exempt from the Act's requirements by operation of 29 U.S.C. § 203(*l*). In either case, the applicants could not have been before the Court as defendants in the original suit, and are therefore bereft of an independent jurisdictional basis for permissive intervention.

This conclusion was reached in a case remarkably similar to that at bar. In *Durkin v. Pet Milk Co.*, 14 F.R.D. 374 (W.D.Ark.

1953), milk–route men sought to intervene as defendants in an FLSA action brought by the Secretary of Labor against the dairy claimed to employ them. The court reasoned that the applicants could not have been joined as defendants in the Secretary's action under Section 17 of the Act, which relates to actions against employers. Nor did the court read Section 16, which authorizes suit by employees to recover under–payments, to permit the employees to initiate an action directly against the Secretary. 14 F.R.D. at 379.[9] This Court cannot locate any other statutory bases of jurisdiction over the applicants' or their counterclaim. The jurisdictional grant of 28 U.S.C. § 1337 over cases "arising under any Act of Congress regulating commerce" does not afford the applicants any grounds for a direct action against the Secretary, who is shielded by the unwaived sovereign immunity of the United States. The Declaratory Judgment Act, 28 U.S.C. §§ 2201 & 2202, merely authorizes an additional remedy against a defendant over whom jurisdiction has been acquired; it does not of itself constitute a waiver of sovereign immunity. *See e. g., Foreman v. General Motors Corp.*, 473 F.Supp. 166 (E.D.Mich.1979). Thus, the applicants could neither have been named as defendants in the Secretary's original action, nor have commenced their own action directly against the Secretary.

The Court is of the opinion, however, that given jurisdiction over the principal cause, it can properly take ancillary jurisdiction over the applicants as parties–defendant. (The doctrine of sovereign immunity precludes jurisdiction over their counterclaim for declaratory relief against the United States.) *See generally City of Cleveland v. Cleveland Electric Illuminating Co.*, 570 F.2d 123, 126 (6th Cir. 1978); *LASA Per L'industria del Marmo Societa*

---

**9.** The *Durkin* court refused to grant either intervention of right or permissive intervention. The former was denied under the language of old Rule 24(a)(2), which required that "the applicant is or may be bound by a judgment in the action." The latter was withheld for want of an independent jurisdictional basis, but without consideration of ancillary jurisdiction. The

Court also found the routemen's interest to be not directly affected by, and well–represented in, the litigation. Nevertheless, "Rule 24(b) contemplates that judges may properly reach different decisions in generally similar circumstances." *Brewer v. Republic Steel Corp.*, 513 F.2d 1222, 1225 (6th Cir. 1975).

Per *Azioni v. Alexander*, 414 F.2d 143 (6th Cir. 1969); 13 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3523 (1975). Although the doctrine of ancillary jurisdiction has been fairly characterized as an "ill–defined concept," *id.* at 56, its operative rationale is well–summarized as follows:

> [Ancillary jurisdiction] is a limited exception to the rule that federal district courts have only such jurisdiction as is provided, in terms, by the Constitution or a statute. It may be employed when a federal court is presented with issues or parties so closely related to a matter over which it has jurisdiction as to be part of a single Article III "case". In such circumstances, and in the interest of judicial economy and complete justice, a federal court can exercise ancillary jurisdiction .over such issues or parties.

> [[I]t] operates only when there is a tight nexus with a subject matter properly in federal court. See Rules 14 and 24, F.R. Civ.P. That is, the ancillary claim must bear a logical relationship to the aggregate core of operative facts which constitutes the main claim over which the court has an independent basis of federal jurisdiction. *Revere Copper & Brass Inc. v. Aetna Casualty & Surety Co.*, 426 F.2d 709, 714 (5th Cir. 1970).

*Warren G. Kleban Engineering Corp. v. Caldwell*, 490 F.2d 800, 802 (5th Cir. 1974).

■ The applicants' instant claim falls squarely within the contours of the rationale for the exercise of ancillary jurisdiction. The concept was originally developed in order to allow participation by those whose direct interests are inextricably bound up in federal litigation initiated by others.

> The doctrine of ancillary jurisdiction . . is bottomed on the notion that since federal jurisdiction in the principal suit effectively controls the property or fund under dispute, other claimants thereto should be allowed to intervene in order to protect their interests, without regard to jurisdiction.

*Aldinger v. Howard*, 427 U.S. 1, 11, 96 S.Ct. 2413, 2419, 49 L.Ed.2d 276 (1976) (footnote omitted); *Fulton Bank v. Hozier*, 267 U.S. 276, 280, 45 S.Ct. 261, 262, 69 L.Ed. 609 (1925); *see also Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 375–77, 98 S.Ct. 2396, 2403–2404, 57 L.Ed.2d 274 (1978). The applicants' interest is effectively controlled by the present suit, which will adjudicate the propriety of the "sharecropper" contracts they wish to preserve. Although contract rights are not a "property or fund" in the traditional sense, they are nevertheless relational interests of real value, governed by operation of law. In this sense, rights under a contract are a species of "property"; the applicants ought therefore be allowed to participate in the litigation which will determine their rights as to the contracts. "Indeed the earlier cases often said that ancillary jurisdiction could rest only on property in the court's possession or control but it is entirely clear that the concept has grown considerably since that time and that property is not a necessary prerequisite for ancillary jurisdiction." 7A C. Wright & A. Miller, Federal Practice & Procedure § 1917, at 599–600 (1972) (footnotes omitted).

Unlike *Aldinger* and *Kroger*, which disallowed the exercise of pendent jurisdiction, and *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), in which ancillary jurisdiction was not properly taken, the present case is not an instance of a plaintiff in diversity making improper use of these doctrines by attempting to litigate a claim in federal court without satisfying the citizenship and amount in controversy requirements of 28 U.S.C. § 1332. Rather, the applicants had no choice of the forum where their interests have been implicated. They must appear, if at all, only where the original action was commenced, and so cannot be thought to circumvent jurisdictional requirements by relying on ancillary jurisdiction to bring an action which may not otherwise be heard in federal court. The principal cause and the original parties are properly before the Court; the applicants do not bring with them a controversy which would not otherwise be here. Thus, it has been pointed out that intervention "fits perfectly the ration-

ale underlying ancillary jurisdiction [when] the intervenor is not initiating a controversy but rather is asking to be relieved of the danger of being deprived of the opportunity to adjudicate an issue in a separate action." *Developments in the Law—Multiparty Litigation in the Federal Courts*, 71 Harv.L. Rev. 874, 905 (1958).

It has been authoritatively stated that ancillary jurisdiction may not be relied upon to supply the independent jurisdictional grounds required for permissive intervention. *Blake v. Pallan*, 554 F.2d 947, 956–57 (9th Cir. 1977); *Kleban Engineering*, 490 F.2d at 802; *Babcock & Wilcox Co. v. Parsons Corp.*, 430 F.2d 531, 540 (8th Cir. 1970); 4 Moore's Federal Practice ¶ 24.18 (2d ed. 1979); C. Wright, Law of Federal Courts § 75, at 373 (3d ed. 1976). Yet the same authorities state with equal certainty that no independent jurisdictional basis is necessary for intervention as of right. Rule 24(a), however, can no more expand the courts' jurisdiction than can Rule 24(b). Intervention under section (a) is permitted without consideration of jurisdiction only because, due to the demanding standard for intervention as of right, *ancillary jurisdiction is always present.* 7A C. Wright & A. Miller, Federal Practice & Procedure § 1917, at 597–601 (1972); Fraser, *Ancillary Jurisdiction of Federal Courts of Persons Whose Interest May Be Impaired If Not Joined*, 62 F.R.D. 483, 483 (1974). The laxer standard of Rule 24(b)(2)–"a question of law or fact in common"–provides no such guarantee, and applications under its terms must consequently be examined for a jurisdictional basis. It does not follow, however, that permissive intervention can never arise in circumstances where there is a "tight nexus" with a subject matter properly in federal court. Accordingly, to the extent that it is the effective basis for ancillary jurisdiction over interventions of right, ancillary jurisdiction may properly be exercised if the facts of a particular application for permissive intervention so warrant.

The propriety of ancillary jurisdiction can be determined only upon the facts of the particular case. "[T]here must be an examination of the posture in which the non–federal claim is asserted . . . ." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. at 373, 98 S.Ct. at 2402. Several courts have found that the exercise of ancillary jurisdiction was justified on the facts before them when permissive intervention was sought in a federal question case, although no *res* was at stake. *United States v. Local 638, Enterprise Association*, 347 F.Supp. 164, 168 (S.D.N.Y.1972) (Civil Rights Act); *De Korwin v. First National Bank of Chicago*, 94 F.Supp. 577, 579 (N.D. Ill.1950) (McFadden Act). See also *TPI Corp. v. Merchandise Mart of South Carolina, Inc.*, 61 F.R.D. 684, 691 (D.S.C.1974) (minimum amount in controversy not required of defendant intervenors in diversity case). The application at bar presents circumstances befitting the extension of ancillary jurisdiction. The primary case is before the Court on a Federal issue; the legal claims and underlying facts could not be more closely related to those of the principal cause; the Court's order will dispose of the applicants' interest; there is nowhere else for them to litigate the issue.

> Such a permissive intervention enhances the efficacy of the federal decree. It does not burden the federal courts unduly, for its operation is permissive and may be easily restricted. It does not lend itself to a possible collusion to confer federal jurisdiction which could exist in diversity cases, because federal question jurisdiction cannot so easily be manufactured.

*United States v. Local 638, Enterprise Association*, 347 F.Supp. at 168 (Gurfein, J.). No more dishonor is done to Rule 82 than when intervention of right is granted without an independent jurisdictional basis; the doctrine of ancillary jurisdiction long predates the adoption of the Federal Rules, and its exercise cannot be thought to "extend" the jurisdiction of this Court by operation of Rule 24. Perhaps more honor is paid the paramount command of Fed.R. Civ.P. 1: that the Federal Rules "be construed to secure the just, speedy, and inexpensive determination of every action."

The Court concludes that the exercise of ancillary jurisdiction over the applicants as parties–defendant is proper.

## II.  DISCOVERY MOTIONS

Parties to a civil action should ideally conduct discovery by mutual agreement and without judicial supervision. The parties to this ction, however, have had frequent recourse to the Court to resolve discovery disputes which must candidly be described as petty. The Court trusts that, with the present disposition of pending motions, the parties will proceed without undue friction.

### A.  BRANDEL DEPOSITION

On November 14, 1978 the Secretary deposed defendant Brandel. Among a great many other questions, information was sought concerning Brandel's farm operations in the years since 1974. Brandel's attorney counselled him to answer only those questions relating to 1975 and 1976, on the grounds that subsequent years are irrelevant to the case. Brandel Dep. at 15–16, 20. The Secretary has moved the Court to compel answer to questions about the crop years since 1976. Although he has not specifically opposed the Secretary's motion, Brandel has produced a reciprocal motion for a protective order. The Court hereby grants the Secretary's motion and denies that of Brandel.

█ The Secretary's inquiries about the years since 1976 are of obvious relevance. A continuing violation of FLSA requirements has been alleged, thereby placing at issue Brandel's labor practices since 1974. Moreover, in order to justify the injunctive relief he seeks, the Secretary must demonstrate that violations still occur, and may continue in the future. Information about the present crop year is apposite to the former showing, and data relating to Brandel's activities over the years casts light on the latter. Finally, efficient discovery practice properly requires that answer be made at a deposition even if an objection is interposed. "Evidence objected to shall be taken *subject* to the objections." Fed.R.Civ.P. 30(c) (emphasis added); *Ralston Purina Co. v. McFarland*, 550 F.2d 967, 973 (4th Cir. 1977); *Lloyd v. Cessna Aircraft Co.*, 74 F.R.D. 518, 519–20 (E.D.Tenn.1977). The Court therefore concludes that, counsel's objection of irrelevance notwithstanding, Brandel should have answered the Secretary's questions concerning all crop years since 1973.

In support of his motion for a protective order, Brandel reiterates the objection of irrelevance made during the deposition, and also claims, for the first time, that the privilege against self–incrimination shields him from being compelled to answer. This Court extends every respect to an invocation of the Fifth Amendment privilege, which "must be accorded liberal construction in favor of the right it was intended to secure." *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). Nevertheless, the privilege does not here cloak Brandel with complete or automatic immunity from answering the questions put to him.

█ A witness' privilege not to incriminate himself extends to all types of testimonial proceedings, whether criminal, civil, legislative, or administrative, *Lefkowitz v. Cunningham*, 431 U.S. 801, 805, 97 S.Ct. 2132, 2135, 53 L.Ed.2d 1 (1977), including pretrial discovery in civil cases. *United States v. Kordel*, 397 U.S. 1, 7–8, 90 S.Ct. 763, 766–767, 25 L.Ed.2d 1 (1970). Recent cases have explored the circumstances in which a deponent in a civil case may properly claim the privilege. *In re Folding Carton Antitrust Litigation*, 609 F.2d 867 (7th Cir. 1979); *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084 (5th Cir. 1979); *In re Master Key Litigation*, 507 F.2d 292 (9th Cir. 1974). *See* Note, 13 U.Mich.J.L. Ref. 435 (1980). The Court assumes, without deciding, that the privilege may be invoked at a supplementary deposition conducted pursuant to a Rule 37 order compelling answer, even though it was not raised during the original proceeding at which the deponent refused to answer. *See generally*

Fed.R.Evid. 103(a)(1).[10]  (Of course, the better, and perhaps required, practice is for objection to be made when the question is first posited.)  The Court therefore moves to a review of the circumstances which justify reliance on the privilege.  *See generally In re Atterbury,* 316 F.2d 106 (6th Cir. 1963).

▇▇ The scope of the privilege "not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime."  *Hoffman v. United States,* 341 U.S. at 486, 71 S.Ct. at 818.  Protection is confined, however, to "instances where the witness has reasonable cause to apprehend danger from a direct answer."  *Id.*  Section 16(a) of the FLSA provides that violators of Section 15 may be fined or imprisoned or both, 29 U.S.C. § 216(a);[11] as long as prosecution is possible under its terms, Brandel has such reasonable cause.  *Id.* at 486–87, 71 S.Ct. at 818–819; *In re Atterbury,* 316 F.2d at 110.  Only if there is a legal bar to initiation of criminal proceedings, such as the expiration of the statute of limitations, a grant of immunity, or second jeopardy, none of which are present here, can there be no possibility of prosecution.  The Secretary's argument that there is no "reasonable cause to apprehend danger" because "prosecutions under the Fair Labor Standards Act are exceedingly rare" is thus irrelevant.  "Short of the existence of one of these indicia of an absolute bar to subsequent prosecution, a judge's prediction as to the likelihood of a prosecutor filing an indictment is not dispositive in ascertaining the permissible scope of a claim of fifth amendment privilege."  *In re Folding Carton Antitrust Litigation,* 609 F.2d at 872 (footnotes omitted).

▇▇ Despite his present alarm that answers relating to post–1976 crop years could tend to incriminate him, Brandel freely responded to identical inquiries about the years 1974 and 1975 without raising the privilege.  The Secretary argues that since Brandel may have already made incriminating statements relating to 1974 and 1975, he waived his privilege to decline to answer inquiries relating to subsequent years, and must therefore "adhere to his oath to tell the 'whole truth' about what he has begun to reveal."  The matter of waiver is not so simple, however.  Once incriminating facts "have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of the *details.*"  *Rogers v. United States,* 340 U.S. 367, 373, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1951) (emphasis added).  As a civil deponent, Brandel "[may] refuse to answer any questions about a matter already discussed, even if the facts already revealed are incriminating, as long as the answers sought may tend to *further* incriminate him."  *In re Master Key Litigation,* 507 F.2d at 294 (emphasis in original).  *Accord, United States v. LaRiche,* 549 F.2d 1088, 1096 (6th Cir.), *cert. denied,* 430 U.S. 987, 97 S.Ct. 1687, 52 L.Ed.2d 383 and 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 452 (1977) (citing *Master Key*).

▇▇ To the extent that Brandel's testimony has revealed non–compliance with any FLSA requirements punishable under Section 16(a) during the years 1974 and

---

**10.** The Secretary's reliance on *Garner v. U. S.,* 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976), for the proposition that information would not be "compelled" since Brandel did not invoke the privilege when he refused to answer, is misplaced.  *Garner* involved the use of incriminatory information provided without asserting the privilege to put the questioner on notice.  Here, although the privilege was not raised, no information was provided in the first place.  It would be anomalous to *require* incriminatory testimony because the deponent earlier refused to provide it on other grounds.

**11.** 29 U.S.C. § 216(a) provides:

Any person who willfully violates any of the provisions of section 215 of this title shall upon conviction thereof be subject to a fine of not more than $10,000, or to imprisonment for not more than six months, or both.  No person shall be imprisoned under this subsection except for an offense committed after the conviction of such person for a prior offense under this subsection.

1975, he may no longer refuse to respond to queries about the details of such violations. His privilege to avoid questions about crop years since 1975, however, turns on whether his answers could *further* incriminate him; that is, expose him to indictment for additional violations of the FLSA (or any other statute, for that matter). Such information will not automatically put him at risk of adventitious culpability. Section 16(a) proscribes *continuous* conduct; only one offense is deemed committed even though the course of conduct persists over a long period of time. *United States v. Universal C. I. T. Credit Corp.*, 344 U.S. 218, 223, 73 S.Ct. 227, 230, 97 L.Ed. 260 (1952). Brandel's "sharecropping" practice probably originated before 1973, continued through 1978, and presumably down to the present day. Given this course of continuous conduct, Brandel at most could be convicted of one offense per violated section, even though infractions occurred throughout several different years. Thus, to the extent that he may have already testified to facts incriminating him under various sections of FLSA, his additional testimony about post–1975 crop years cannot further incriminate him under those sections. The privilege no longer excuses him from answering the Secretary's inquiries regarding temporal extensions of 1974 and 1975 practices to which he has already testified, and the Court directs that he respond fully to such questions at any supplementary depositions the Secretary may schedule. However, if Brandel determines or concludes that post–1975 conduct will not be construed as continuous by the Secretary for criminal prosecution purposes, then he may validly invoke the Fifth Amendment.

In the course of answering, Brandel may believe that his replies could indicate violations of FLSA sections not yet implicated, or of entirely different statutes. Such information could expose him to further criminal liability, and so would be subject to valid invocation of the privilege. In that event, Brandel must then and there raise his Fifth Amendment objection, in order to inform the Secretary's questions, and to enable the Court to later assess its validity.[12] The privilege must be claimed in response to particular questions, and not as a blanket refusal to respond. Such an objection avoids the Rule 30(c) requirement that answer be made notwithstanding the objection.

Having prevailed in his motion to compel answers, the Secretary is entitled to an award of reasonable expenses incurred in bringing it, "unless the court finds that the opposition to the motion was substantially justified or that other circumstances made an award of expenses unjust." Fed. R.Civ.P. 37(a)(4). Even though the Secretary has requested the modest award of $200 in costs, the Court will not approve the assessment. In cases such as this, where an arguable claim of Fifth Amendment protection is involved, the Court believes that an award of expenses to the prevailing movant is not appropriate. Unless it appears that the assertion of privilege is groundless and obfuscatory, the good faith exercise of this constitutionally protected right should not be burdened by the imposition of discovery sanctions.

## B. OCHARZAK DEPOSITION

On 14 November 1978, Brandel took the deposition of one Daniel H. Ocharzak, the assistant area director for the United States Department of Labor in Grand Rapids, Michigan. Among the questions put to Ocharzak were several which entailed the source of the Secretary's information about the "sharecropper" arrangement. Counsel for the Secretary refused to permit answer on the grounds of the so–called "informer's privilege." Ocharzak Dep. at 3–11, *passim*. *See generally Usery v. Michigan National Bank*, 83 Lab.Cas. ¶ 33,649 (6th Cir. 1978); *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139 (6th Cir. 1977). Brandel then brought the present motion to compel answers.

---

**12.** Further disputation over the scope of Brandel's privilege not to respond would be obviated, of course, by a grant of transactional immunity.

It is clear that Ocharzak was well within the scope of the informer's privilege when he refused to answer the movant's questions. *Dunlop v. Carriage Carpet Co.*, 548 F.2d at 145–46; *United States v. Julius Doochin Enterprises, Inc.*, 370 F.Supp. 942 (N.D.Tenn.1972); *Hodgson v. Keeler Brass Co.*, 56 F.R.D. 126 (W.D.Mich. 1972). Indeed Brandel conceded the issue during oral argument, and the parties agreed to exchange a list of witnesses at the final pretrial conference. Brandel had ample time between the deposition and the April 6, 1979 filing to research Ocharzak's legal position; the most superficial reading of recent case law would have revealed the futility of the pending motion. Brandel does cite several cases which appear to restrict the privilege, but all are district court opinions of early vintage from circuits which have since enunciated strong versions which cover the present situation. Fed.R. Civ.P. 37(a)(4) mandates that reasonable expenses be awarded to a party which has successfully opposed (or raised) a motion to compel discovery, unless the Court finds that such an award would be unjust. *H. K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1124–25 (6th Cir. 1976). The Court so finds. Brandel's legal argument is untenable, and his motion should not have been brought. The Court perceives, however, that the motion was raised in good faith and without guileful motive. The Secretary's request for $100 in expenses is therefore denied.

### C. INTERROGATORIES

At the very outset of this litigation, on November 18, 1976, the Secretary first propounded a set of interrogatories to defendant Brandel. It was the opening salvo in what has become a long–running discovery battle. After considering a fusillade of counter–motions, this Court (per Fox, C. J.) on April 18, 1977 ordered that Brandel make complete written answer to the interrogatories by May 11, 1977. Timely answers were in fact docketed by the Court on May 12, 1977. There the matter rested while the parties engaged in other skirmishes. Some fourteen months later, in the pending motion to compel answers docketed July 3, 1978, the Secretary reopened fire by expressing his dissatisfaction with the "inadequate and incomplete" answers made in May of the previous year. Brandel shot back the same explanation as he had made when opposing initial answer: the migrant workers were not his "employees", and he therefore had neither knowledge nor record of the wage and hour information requested by the Secretary.

The Court perceives no utility in reenacting the initial conflict. Brandel, under Court order to make answer if he can, insists that he cannot. Indeed, possession of responsive knowledge or records would be fundamentally inconsistent with his legal defense that the migrant workers are "independent contractors". If it later appears that Brandel deliberately refused to supply requested information to which he has access, the Secretary may resort to the sanctions of Rule 37. Pending that event, the Court will not again order a party to do that which he insists he cannot. The Secretary's motion to compel answers is therefore denied.